George W. Stewart *vs.* Charles H. Thayer.

Suffolk. March 9, 1897. — May 24, 1897.

Present: Field, C. J., Allen, Knowlton, Lathrop, & Barker, JJ.

*Entire Contract — Lord's Day — Statute.*

By the terms of a contract between A. and B., A. was to receive for the services of himself and band, during two months, $24 for a week of seven days for each man, for the leader double pay, and for the soloist, when there was one, $10. A. performed his part, playing with the band at a seaside resort of which B. was the proprietor. On Sundays the afternoon concerts began from half past two to half past three, and there were also concerts in the evening. *Held,* in an action by A. against B. to recover a balance due him, that the contract was an entire one, and that the defence that, as some of the work and labor contracted for was to be done on the Lord's day, it was forbidden by the Pub. Sts. c. 98, §§ 1, 2, was good, as by that statute no concert of any kind could be licensed on the Lord's day, except after sunset.

Contract, brought originally against the Point of Pines Company, Franklin W. Lodge, and Charles H. Thayer, for services rendered in furnishing music at the request of the defendant Thayer. The plaintiff, having discontinued against the first two defendants, proceeded against Thayer, who set up a discharge in insolvency, to obtain a special judgment against him under the statute to enable the plaintiff to proceed against the sureties on a

bond given to dissolve an attachment. Trial in the Superior Court, without a jury, before *Bond*, J., who declined to give any of the rulings asked by the defendant, and found for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*G. A. O. Ernst*, for the defendant.

*R. W. Nason*, for the plaintiff.

LATHROP, J. The plaintiff seeks to recover for a balance due him in pursuance of a contract made with the defendant in 1893, by the terms of which the plaintiff was to receive for the services of himself and band, during July and August of that year, $24 for a week of seven days for each man, for the leader double pay, and for the soloist, when there was one, $10. The plaintiff performed his part of the contract, playing with the band at a seaside resort of which the defendant was the proprietor. On Sundays, the afternoon concerts began from half past two to half past three, and there were also concerts in the evening. The defence is, that, as some of the work and labor contracted for was to be done on the Lord's day, it was forbidden by the Pub. Sts. c. 98, §§ 1, 2.

We have no doubt that the contract was an entire one. *Miner* v. *Bradley*, 22 Pick. 457, 459. *Clark* v. *Baker*, 5 Met. 452. *Morse* v. *Brackett*, 98 Mass. 205. *Mansfield* v. *Trigg*, 113 Mass. 350, 353. *Handy* v. *St. Paul Globe Pub. Co.* 41 Minn. 188. *McClanathan* v. *Friedel*, 85 Hun, 175; and 32 N. Y. Supp. 588.

If a person makes a contract in violation of the statutes for the observance of the Lord's day, he cannot maintain an action thereon. *Hazard* v. *Day*, 14 Allen, 487. *Myers* v. *Meinrath*, 101 Mass. 366. Such a contract is absolutely void and cannot be ratified. *Day* v. *McAllister*, 15 Gray, 433. *Stevens* v. *Wood*, 127 Mass. 123.

The principal ground on which the plaintiff contends that he is entitled to recover is, that the concert might have been licensed, and that, as the plaintiff was ignorant that the defendant had not procured a license, he is entitled to recover, under the principle laid down in *Emery* v. *Kempton*, 2 Gray, 257, and *Roys* v. *Johnson*, 7 Gray, 162. We are of opinion, however, that under the Pub. Sts. c. 98, §§ 1, 2, there was no authority in any person or board to license a concert on the Lord's day, except a

concert of sacred music on the evening of that day ; and that, as the plaintiff agreed to give concerts on that day, and not merely on the evening thereof, and actually did give them, he is precluded from recovery. The distinction between offences committed during the daylight of the Lord's day and after sunset thereof, has been taken since early times. Colonial Laws, 1660–1672, (Whitmore's ed.) 189, 190. Colonial Laws, 1672–1686, (Whitmore's ed.) 132, 133, 249, 250, 269. Prov. Laws, 1692–3, c. 22, 1 Prov. Laws, (State ed.) 58. Prov. Laws, 1711–12, c. 6, §§ 14–16, 1 Prov. Laws, (State ed.) 681. Prov. Laws, 1727–28, c. 5, § 2, 2 Prov. Laws, (State ed.) 456.

In the first statute passed by the Commonwealth on the subject, St. 1782, c. 23, where the Lord's day is declared to be " the time included between the midnight preceding and the sun sitting of the same day," the doing of certain things on the Lord's day is forbidden, and certain other things are prohibited on the evening next preceding or succeeding the Lord's day, and among them is being present " at any concert of music." This statute was repealed by the St. of 1791, c. 58, but its provisions were in substance re-enacted. See *Tracy* v. *Jenks,* 15 Pick. 465. This statute, however, differs from the preceding in prohibiting, in § 1, the being present at any concert of music on the Lord's day, or any part thereof, and in § 5 prohibiting the same thing on the evening next preceding or succeeding the Lord's day.

Under the St. of 1816, c. 112, § 1, which contains the words " on any part of the Lord's day or evening," it was held by this court that " the Legislature intended Sunday and the evening immediately following sunset on that day; and not the evening immediately preceding Sunday." *Commonwealth* v. *Newton,* 8 Pick. 234.

The Rev. Sts. c. 50, § 4, follow the St. of 1791 in its definition of the time included in the Lord's day, and § 5 provides, " No person shall be present at any game, sport, play, or public diversion, except concerts of sacred music, upon the evening next preceding or following the Lord's day." This we believe is the first time that concerts of sacred music are mentioned in our statutes relating to the observance of Sunday. Nothing is said about such concerts in the draft prepared by the commissioners, which followed the previous statutes.

Section 3 of the Rev. Sts. c. 50, related to innholders, retailers of spirituous liquors, or other persons keeping a house of public entertainment. This was amended by the St. of 1844, c. 160, so as to include victuallers, and persons keeping shops, cellars, or any other place of public entertainment or refreshment. For the purposes of this section so amended, the Lord's day was declared " to include the time between the midnight preceding, and the midnight succeeding said day."

By the St. of 1858, c. 151, § 5 of the Rev. Sts. c. 50, was repealed, and the following section was enacted : " No person shall be present at any game, sport, play, or public diversion, except concerts of sacred music, upon the evening following the Lord's day ; nor upon the evening next preceding the Lord's day, unless such game, sport, play, or public diversion shall have been duly licensed by the persons or board authorized by law to grant licenses in such cases."

In the Gen. Sts. c. 84, § 12, the Legislature made a general provision, for the first time, applicable to all the sections of the act, as follows : " The Lord's day shall include the time from midnight to midnight." This does not appear either in the report of the commissioners or in the amendments proposed by the committee of the Legislature. Section 4, however, contains the provisions of the St. of 1858, c. 151, relating to sacred concerts on the evening following the Lord's day, or on the evening of the day next preceding, though the word " following " was changed to " of."

The Pub. Sts. c. 98, follow the provisions of the General Statutes as amended, with some change in arrangement. In 1887, the words " or upon the evening next preceding the Lord's day " were struck out. St. 1887, c. 391, § 1.

As the law stood in 1893, while it implies that a sacred concert might be licensed on the evening of the Lord's day, and this could probably be done under the Pub. Sts. c. 102, § 115, yet we find no statute for licensing a concert of any kind on any other part of the day.

The decision of the learned judge of the court below, who found for the plaintiff, apparently was based upon the theory that a license could have been obtained ; but this seems to us not warranted by the law in force at the time.

Subsequently, the Legislature seems to have supposed that a license under the Pub. Sts. c. 102, § 115, might apply to the Lord's day, for there was added thereto the following proviso: " Provided, however, that in any city the mayor, without the concurrence of the aldermen, or the board of police commissioners in case there is such a board, may revoke or suspend such license for holding any such exhibition, show, or amusement on the Lord's day, if in the opinion of such mayor or board such revocation or suspension will be for the best interests of the public." St. 1894, c. 353.

Subsequently, the St. of 1894, and §§ 1, 2, of the Pub. Sts. c. 98, were repealed, and other provisions enacted. St. 1895, c. 434. But the validity of the contract must be determined by the law as it existed in 1893, and by that law, as we interpret it, no concert of any kind could be licensed on the Lord's day except after sunset. As the defendant could not have obtained a valid license for a concert of any kind in the afternoon of that day, we need not consider whether the concerts which were then given were sacred or not.

As there must be a new trial, we have no occasion to consider at length the requests asked for by the defendant. It is enough to say that they were in substance correct, and adapted to the case.                              *Exceptions sustained.*