(No. 19353.—

THE BELLEVILLE ADVOCATE PRINTING COMPANY, Defendant in Error, *vs.* THE COUNTY OF ST. CLAIR, Plaintiff in Error.

*Opinion filed October 19, 1929.*

H. C. LINDAUER, State's Attorney, (F. J. TECKLENBURG, of counsel,) for plaintiff in error.

PRESTON K. JOHNSON, and GREEN & PALMER, (HENRY I. GREEN, and ORIS BARTH, of counsel,) for defendant in error.

Per CURIAM: On October 1, 1927, the board of supervisors of the county of St. Clair, plaintiff in error, allowed to the Belleville Advocate Printing Company, defendant in error, the sum of $2155.80 on its claim against that county for $3559.60 for printing the lists of assessments for taxation for the year 1927 of Prairie Du Long, Smithton, St. Clair and Belleville townships, in that county. The balance of the claim, $1403.80, was disallowed by the county board. Defendant in error appealed from the order of the county board disallowing the balance to the circuit court of St. Clair county, where a hearing was had before the court without a jury and judgment was entered against plaintiff in error for $1403.80. This writ of error is sued out to review the record.

There is no dispute about the facts. The claim of defendant in error as presented to the county board was for printing the assessment list of Prairie Du Long township, 204 names at five cents, $10.20; 534 tracts at ten cents, $53.40; of Smithton township, 2223 lines at ten cents, $223.30; of St. Clair township, 5063 lines at ten cents, $506.30; of Belleville township, 27,674 lines at ten cents, $2767.40; a total of $3559.60. The amount allowed by the county board included the total amount claimed for printing the list of Prairie Du Long township. For printing the assessment lists of Smithton, St. Clair and Belleville townships the county board allowed five cents a name and ten cents a tract, and not ten cents a line as claimed by the defendant in error. The amount allowed by the county board has been paid to defendant in error. That amount is $1403.80 less than the amount claimed by defendant in error.

Fred E. Evans, president of defendant in error, testified that the *Belleville Advocate* has been printed daily, except Sunday, for twenty-three years. The assessment lists published were brought to him by Louis G. Miller, a

member of the board of assessors of St. Clair county, who directed him to print the lists. The St. Clair township list was brought to him about June 25 or 26, 1927, the Smithton township list some time before that, and the Belleville township list on June 30. The Smithton township list was published July 11, 1927, the St. Clair township list July 12, 1927, and the Belleville township list July 28, 1927. He stated that when Miller brought the St. Clair township list to him the first time he said that he would not print it at the rate then provided by the statute for such publication because "there was no money in it." Miller brought the St. Clair township list again at the time he brought the Belleville township list, on June 30. Witness asked Miller if he was trying to get the lists in before July 1, and Miller replied that he was not. There was some discussion about the rate and the act that was pending before, or had been passed by, the General Assembly changing the rate of compensation to be paid for printing assessment lists. Witness accepted the lists for publication because he knew that the General Assembly had passed that act.

Section 29 of the act of 1898 for the assessment of property and providing the means therefor, amended June 21, 1919, was amended June 30, 1923, to read as follows: "As soon as the county assessor or supervisor of assessments shall have completed the assessment in the year A. D. 1907, he shall cause to be published a full and complete list of such assessment by township or assessment districts, which publication shall be made on or before July 10, of each year, in some public newspaper or newspapers printed and published in said county: *Provided,* that in every township or assessment district in which there is published one or more newspapers of general circulation, the list of such township or assessment district shall be published in one of said newspapers so printed and published in said township or assessment district: *And, provided,* that said newspaper shall not receive for the publishing of said as-

sessment list to exceed five (5) cents per name for each person or corporation so assessed, and ten (10) cents for each description of real estate, and if impossible to secure publication at that price, that the publication be let to the lowest bidder at a price not exceeding five cents per tract, to be printed in pamphlet form, and shall furnish to the county assessor, the county supervisor of assessments and the board of review, as many copies of said paper containing the assessment list as they may require, said papers so furnished not to cost to exceed five (5) cents per copy: *Provided, further,* that after the year 1907, the publication shall only be of the assessment of personal property and the changes made, if any, in real estate, but the real estate assessment shall be published full every four (4) years, beginning with the year 1907: *Provided, further,* that in counties of 250,000 inhabitants or over, no assessment of real estate shall be published as herein provided, until such assessment shall have been equalized, revised or affirmed by the board of review, and when the board of review shall have acted upon the assessment list of real property, as herein provided in the year 1907 and every four years thereafter, the assessors and board of review shall cause to be published, a full and complete list of such assessment on real property, together with all changes made by the board of review under the authority of this act, such changes to be indicated in a separate column; such publication to be in pamphlet form by election districts in lieu of publication in a newspaper: *And, provided,* that the board of review shall cause to be mailed to each tax-payer in said election precinct, a copy of the said list for his precinct. * * * The expense of such printing and publication shall be paid out of the county treasury." (Laws of 1923, p. 496.)

The amendment of said section 29 of June 21, 1919, is identical with the amendment of 1923 above set forth except that in the fourth proviso the number of inhabitants

in the amendment of 1919 is "125,000 inhabitants or over," while in the amendment of 1923 the number of the inhabitants mentioned is "250,000 inhabitants or over." (Laws of 1919, p. 725.) In 1927 section 29 was again amended. The only change made by the amendment·of 1927 was to substitute in lieu of the second proviso of the section as amended in 1923 the following: "The newspaper shall be entitled to a fee of ten cents per line for publishing the assessment list, and shall furnish to the county assessor, the county supervisor of assessments, and the board of review, as many copies of said paper containing the assessment list as they may require, said papers so furnished not to cost to exceed five (5) cents per copy." (Laws of 1927, p. 738.)

It was the contention of defendant in error in the court below, and it is its contention in this court, that it is entitled to recover from plaintiff in error for publishing the assessment lists of Smithton, St. Clair and Belleville townships under the provision of section 29 as amended in 1927 at the rate of ten cents per line. The assessment list of Prairie Du Long township having been published on June 15, 1927, and the publisher having been paid at the statutory rate then in force, the charge for printing the assessment list of that township is not now here in controversy.

It is the contention of plaintiff in error that both the amendatory acts of 1923 and of 1927 are unconstitutional, and that the only authority for the county of St. Clair to publish the lists of the townships was section 29 as amended in 1919, and that under the provisions of that section there was no authority for the county to publish the assessment lists in the newspaper but the publication should have been in pamphlet form, as St. Clair county had a population of over 125,000 at the time of the assessments and at the time of the publication. It is the further contention of plaintiff in error that in any event there can be no recovery by defendant in error under section 29 as amended in 1927; that if the section as amended in 1923 is valid, the right of

the parties in this case to contract for such publication is under that amendment; that defendant in error has been paid all that it could contract for or recover under that section, and that the judgment of the court should be reversed. In view of the holding that we shall make in this case it will be unnecessary to pass on the question of the validity of either the act of 1923 or of the act of 1927.

The population of St. Clair county became more than 125,000 before the year 1923. It did not have a population of 250,000 in the year 1923 and it has never had 250,000 population. At the time defendant in error accepted the lists for publication there was no law in force, and had been no law in force previous to that time, that authorized it and plaintiff in error to contract for the printing of the lists at the rate of ten cents a line. By the provisions of section 29 the law had been since July 1, 1923, that a newspaper should not receive for the publication of such assessment lists to exceed five cents per name for each person or corporation assessed and ten cents for each description of real estate. If it was impossible for the public authorities to secure publication at that price the law provided that the publication should be let to the lowest bidder at a price not exceeding five cents per tract, to be printed in pamphlet form, etc. The contract in this case was not let to the lowest bidder, and under the law existing at and prior to the time defendant in error received the lists for publication there was no authority of law for the parties to this suit to contract for a greater sum for printing the lists in question than has been paid to defendant in error for the printing of the lists. At the time the lists were received for printing the act of 1927 had not been approved, and it could not be then known whether it would ever be approved. As a matter of fact it was not approved until July 7, 1927. The law as it existed at the time the services of defendant in error were engaged necessarily became a part of the contract for the printing of the lists. While it is elementary

that a contract should be construed and its validity determined under the law existing at the time the contract was made, (13 Corpus Juris, sec. 40, p. 261; *Stewart* v. *Thayer*, 168 Mass. 519, 47 N. E. 420;) it was then, and it is now, the law that where the rate of compensation for an official newspaper publication is fixed by statute, such rate of compensation may, after a contract therefor is made with the newspaper, be modified by a subsequent statute passed before any printing is done under the contract. (46 Corpus Juris, 38.) When the lists in question were tendered to defendant in error for publication it was at liberty to publish or not, but if it did publish them it was bound by the statute providing for such publication. (*County of Lake* v. *Publishing Co.* 280 Ill. 243.) When the lists were delivered to defendant in error and accepted by it for publication an implied contract arose under the law whereby it agreed to publish the lists within the time prescribed by law, and plaintiff in error became obligated to pay defendant in error therefor at the rate of compensation fixed by the statute in force at the time of such publication, provided that defendant in error should have kept and performed its part of the contract. The statute, both before and after the amendatory act of 1927, provided that the assessment lists should be printed on or before July 10. The lists in question were received by defendant in error in ample time for it to have published the same within the time limit fixed by the statute. It having failed to do so and having failed to perform its contract according to law, and no good and legal reason having been shown by the evidence for such failure, it was not entitled to recover in this action.

The judgment of the circuit court must therefore be, and it is, reversed.

*Judgment reversed.*