## In re LOUIS WOHL, Inc.
### No. 10006.

District Court, E. D. Michigan, S. D. May 27, 1931.

Finkelston, Lovejoy & Kaplan, of Detroit, Mich. (Henry Glicman, of Detroit, Mich., of counsel), for trustee.

Stevenson, Butzel, Eaman & Long and Butzel, Levin & Winston, all of Detroit, Mich., for claimants.

SIMONS, District Judge.

This cause is now before the court upon exceptions to the report of the referees in bankruptcy disallowing the set-offs claimed by the trustee for the above-named bankrupt against proofs of claim filed by the claimants. The trustee's claimed set-offs arise out of the following state of facts: Louis Wohl, the principal stockholder of the bankrupt corporation, owning all of the stock except qualifying shares, and being its president and general manager, was formerly one of the principal stockholders and an executive of Finestine & Wohl, another corporation in the same line of business and at the same location, doing business under the style of the "Ames Company." The latter corporation became a bankrupt prior to the organization of Louis Wohl, Incorporated, and all of its assets were acquired by the present bankrupt. At the time of the bankruptcy of Finestine & Wohl that company owed the Detroit News and the Detroit Times each a substantial sum of money; the Detroit News after crediting dividends of the bankrupt's estate suffering a loss of $6,300, and the Detroit Times, after similar credit, a loss of $720. Upon the organization of the present bankrupt company both of the claimants herein were approached by Louis Wohl, its president, with a view to entering into a contract for advertising in the newspapers published by the claimants. The claimants refused to enter into such contract unless the bankrupt would first obligate itself to make good the losses suffered by the claimants in the prior bankruptcy. To this Wohl consented. The agreement with respect

to payment of past losses was oral, but was fully carried out. The agreements for future advertising were the usual written contracts. In the present proceeding both claimants filed their proofs of claim for amounts due for advertising, and the trustee sought to set off against such amounts the payments made by the bankrupt to each of the claimants on the oral agreements referred to. The referee disallowed the set-off in each case, and approved the claims. The court is now asked to review the referees' findings.

 The legal grounds upon which the trustee's contentions are based are: (1) That the business of the Detroit News and the Detroit Times being the publication of newspapers of general circulation is so affected with a public interest that the claimants are under a legal obligation to sell advertising to all merchants upon equal terms without discrimination, and this regardless of the absence of any legislation regulating the business of newspaper publishers; and (2) that the payment by the bankrupt of the debts of Finestine & Wohl discharged by the adjudication of that company in bankruptcy, were payments of illegal exactions constrained by business exigency, and therefore entitled to be recovered back by the Trustee. In so far as the second contention is concerned, it is manifest that it is based on and subordinate to the first contention, so that the important and the only question to be here decided is whether the business of publishing newspapers is at the common law a business affected with a public interest.

The reasoning upon which trustee's contention is based is interesting, and is substantially as follows: The United States Supreme Court in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, charted a new course with respect to certain businesses which, originally private enterprises and under no duty to serve for a reasonable compensation, became by reason of special elements clothed with a public interest and under a duty to serve the public without discrimination. In Munn v. Illinois, two elements were relied upon: First, that the business was of great public importance; and, second, that it was of a monopolistic character. It is here claimed that the newspaper business has become of such great public importance as to warrant the conclusion arrived at in the Munn case with respect to grain warehousemen, that the owners have granted to the public an interest in the property, and, further, that under the facts herein disclosed the Detroit News and the Detroit Times exercise what is virtually a monopoly in the evening newspaper field.

The doctrine of the Munn Case was later reaffirmed in the case of Budd v. New York, 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247, upon a similar state of facts, but in Brass v. North Dakota, 153 U. S. 391, 14 S. Ct. 857, 38 L. Ed. 757, the requirement of monopoly as a justification for regulation of private business was abandoned, and thereafter but one test remained as to when business became clothed with a public interest, and that was the importance of the particular business. In the case of German Alliance Insurance Company v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, the Supreme Court extended the doctrine to cover not only property but personal contracts, and it is here urged that for every reason existing for declaring a fire insurance company as being affected with a public interest there are many reasons which apply to a metropolitan newspaper. For specific application of what is claimed to be a general doctrine there is cited the case of Uhlman v. Sherman, 22 Ohio N. P. (N. S.) 225, a decision of a court of common pleas of Ohio, wherein it was specifically held that because of the great importance of the newspaper, the favors extended to it by the law in providing for the publication of official notices, and the general dependence, interest, and concern of the public therein, the newspaper has become clothed with a public interest, and that it therefore must be classed with warehouses, public wharves, inns, and many kindred lines of business which have been held so clothed.

There is next urged the case of the Inter-Ocean Publishing Company v. Associated Press, 184 Ill. 448, 56 N. E. 822, 48 L. R. A. 568, 75 Am. St. Rep. 184, in which a large news association, whose business it was to furnish telegraphic news to its subscribers or members, was held to be a business upon which a public interest was engrafted, so that all newspaper publishers who desire to purchase the services of such association were entitled to do so without discrimination. The Inter-Ocean Case was followed and approved in the case of News Publishing Company v. Associated Press, 114 Ill. App. 241. Finally there is urged a consideration of the case of Tyson v. Banton, 273 U. S. 418, 47 S. Ct. 426, 434, 71 L. Ed. 718, 58 A. L. R. 1236 (the theater ticket broker case), and the case of Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327 (the employment agency case). These two latter cases are urged as authority, first, on the con-

tention that the metropolitan newspaper meets the tests there indicated as to when a business is clothed with a public interest, even though the specific business considered in each of those cases did not meet such test, and, secondly, that the dissenting opinions read in the light of the majority opinions indicate that where the public importance and necessity should more clearly appear than they did in the cases cited, that it would be safe to conclude that the Supreme Court would arrive at a different conclusion with respect to newspapers than it did with respect to theatre ticket brokers and employment agencies.

To claimants' contention that in nearly all of the cases cited the courts were called upon to determine the validity of a price fixing statute, and that since here there exists no regulatory act of the Legislature, they are not controlling, the answer is made, and apparently with some logic, that the validity of price fixing statutes depends upon whether or not the business sought to be regulated is at the common law a business clothed with a public interest, and that it is the nature of the business and its importance to the public that determines its public character, and not the fiat of the Legislature, and that in the instant case, while there is no state statute regulating the price which shall be charged by newspapers for advertising, yet in the absence of such legislation the newspaper, if clothed with a public interest, is bound by the common law to serve without discrimination. Wolff Packing Co. v. Industrial Court, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280.

Interesting as the foregoing argument is, it is not convincing. Amplifying the discussions in the cases cited as to when a business is affected with a public interest, the United States Supreme Court, in Williams v. Standard Oil Company of Louisiana, 278 U. S. 235, 49 S. Ct. 115, 116, 73 L. Ed. 287, 60 A. L. R. 596, said of the doctrine of Munn v. Illinois, supra: "As applied in particular instances, its meaning may be considered both from an affirmative and a negative point of view. Affirmatively, it means that a business or property, in order to be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been *devoted* to a public use and its use thereby in effect *granted* to the public [citing Tyson v. Banton, supra]. Negatively, it does not mean that a business is affected with a public interest merely because it is large or because the public are warranted in having a

feeling of concern in respect of its maintenance." The Tyson and the Ribnik Cases, far from showing that the trend of decision is as urged by the trustee, indicate rather that the Supreme Court has gone as far as it proposes to go in declaring private business to be affected with a public interest. The German Alliance Insurance Company Case goes as far in that direction as the Supreme Court is likely to go. As was said by Mr. Chief Justice Taft in National Union Fire Insurance Company v. Wanberg, 260 U. S. 71, 43 S. Ct. 32, 33, 67 L. Ed. 136, in upholding the regulation of hail insurance rates: "We agree that this legislation approaches closely the limit of legislative power, but not that it transcends it." Certainly a newspaper published locally is not in any respect to be compared in its public importance with an insurance company whose rates are determined by averages computed on losses suffered throughout the country.

Nor can any comfort be derived by the trustee from the dissenting opinion in the Tyson and the Ribnik Cases. Mr. Justice Holmes, with Mr. Justice Brandeis concurring, expressly, and Mr. Justice Stone with Mr. Justice Sanford concurring, inferentially, considered the whole matter as a question of legislative power: "The notion that a business is clothed with a public interest," said Mr. Justice Holmes, "and has been devoted to the public use is little more than a fiction intended to beautify what is disagreeable to the sufferers." There being here no state statute regulating the business of newspapers, no question of legislative power is involved.

Coming to the specific application of the doctrine invoked, the only case specifically holding a newspaper to be clothed with a public interest is the decision of the nisi prius court of Ohio in the case of Uhlman v. Sherman, supra. It is interesting to note that there the nisi prius judge frankly admitted that learned and diligent counsel on both sides were unable to find a parallel case, and that he himself had been unable to find one. It is also interesting to note that while it may be true that legislation declaring businesses affected with a public interest as a ground for regulating such businesses may be merely declaratory of the common law, that it has not been pointed out that any state has ever attempted to regulate the business of a newspaper on the ground that such business is one clothed with a public interest. The regulation of businesses generally under the police power is, of course, not here involved.

In the Inter-Ocean Case, it appears that the Associated Press had voluntarily sought corporate existence to engage in an enterprise which invested it with among others the power of eminent domain. It was organized to purchase, erect, lease, operate, and sell telegraph and telephone lines, a business which is essentially public in its nature, and which renders a corporation so engaged amenable to public control. While the corporation never exercised the public powers thus conferred upon it, the court held that such powers were important in determining the character of the corporation under its charter, and the business in which it was actually engaged. It is quite true, as claimed, that the opinion in the Inter-Ocean Case is much broader than the decision, but it can only be read in the light of the facts there disclosed. Moreover, whatever may be urged in support of the reasoning of the Inter-Ocean Case as distinguished from what was there decided upon the facts, that reasoning has not been followed. It was specifically rejected in a similar case by the Supreme Court of Missouri in State v. Associated Press, 159 Mo. 410, 60 S. W. 91, 51 L. R. A. 151, 81 Am. St. Rep. 368, and was rather curtly dismissed by the Circuit Court of Appeals for the Seventh Circuit in Journal of Commerce Publishing Company v. Tribune Company, 286 F. 111. In Commonwealth of Massachusetts v. Boston Transcript Company, 249 Mass. 477, 144 N. E. 400, 402, 35 A. L. R. 1, the Massachusetts Supreme Judicial Court refused to sustain a statute imposing a penalty on the publisher of any newspaper who refused to publish on request at regular rates for space taken the findings of the Minimum Wage Commission, on the ground that it impaired the publisher's constitutional right of contract. The court there said: "It cannot be said on this record that newspapers are affected with a public interest so as to stand on a less favorable ground with respect to legislative regulation like the present than the ordinary person." It has similarly been held that newspapers are not obliged to publish delinquent tax lists, Lake County v. Lake County Publishing & Printing Company, 280 Ill. 243, 117 N. E. 452; Belleville Printing Company v. St. Clair County, 336 Ill. 359, 168 N. E. 312; Wooster v. Mahaska County, 122 Iowa, 300, 98 N. W. 103. It will be remembered that receiving favors from local governments in designating the newspaper as the medium for publication of government notices was regarded by the court in Uhlman v. Sherman, supra, as a warrant for the holding there made.

I find from the foregoing that there is no such trend of decision as the trustee urges. A newspaper is not at the common law a business clothed with a public interest. Objections to the Referees' findings of fact and conclusions of law are overruled, and the report of the referee is confirmed. An order may be entered accordingly.