HAROLD BEIDER, Plaintiff-Appellant, v. EUGENE MATANKY & ASSOCIATES, INC., Defendant-Appellee.

First District (2nd Division) No. 76-1559

Opinion filed November 22, 1977.

Gerald M. Petacque, Mitchell S. Goldgehn, Dom J. Rizzi, and Michael W. Rathsack, all of Chicago, for appellant.

Hollobow & Taslitz, of Chicago (Barry B. Kreisler, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Harold Beider, appeals from an order of the circuit court of Cook County, Illinois, granting summary judgment in favor of defendant, Eugene Matanky & Associates, Inc., and denying plaintiff's request for a stay order and injunction to enjoin defendant from proceeding to arbitration on a written real estate brokerage agreement (Ill. Rev. Stat. 1975, ch. 10, par. 102(b)). On appeal plaintiff contends that the circuit court's denial of plaintiff's request for a stay of arbitration proceedings under section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 102(b)) was against the manifest weight of the evidence.

We affirm.

On November 6, 1972, plaintiff and defendant entered into a written real estate brokerage agreement whereby defendant was employed by plaintiff as an exclusive sales agent to secure a buyer for the Arlington Apartment Hotel located at 530 Arlington Place in Chicago, Illinois. The agreement was signed by plaintiff owner and by Idel Rosenfeld as agent for defendant. Plaintiff gave defendant authority for a period of not less than three months to offer for sale, to advertise and to sell the property for a price of $625,000 or any lesser sum that plaintiff might accept.

The notice requirement of the agreement provided "that this agreement shall remain in effect for the period above specified and shall continue thereafter until either party terminates same by thirty (30) days' written notice."

On February 14, 1973, plaintiff sent a letter to Idel Rosenfeld at the office of defendant by certified mail terminating the exclusive agreement, effective February 6, 1973. This letter was received by an agent of defendant on February 16, 1973. However, on March 16, 1973, defendant procured an offer to purchase the property for $615,000. The buyer was C. Hansen as president of Cardinal Holding Corp. On March 19, 1973, plaintiff accepted this offer. A 30-day notice period, however, calculated from February 16, 1973, expired on March 18, 1973.

For reasons not revealed in the record the sale to Cardinal Holding Corp. pursuant to the March 19, 1973, contract was not consummated. However, on July 23, 1973, plaintiff and Clifford Hansen as president of Cardinal Holding Corp. executed another real estate sales contract for the property at 530 Arlington Place, Chicago, Illinois. On July 30, 1973, plaintiff and defendant signed a contract to pay defendant its commission

in installments. Again, for reasons not revealed in the record, the sale pursuant to the July 23, 1973, contract was not consummated.

On November 16, 1973, defendant demanded arbitration of the question of its commission pursuant to the arbitration clause of the November 6, 1972, real estate brokerage agreement. That agreement provides in pertinent part: "Any controversy or claim arising out of or relating to the contract, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

Plaintiff objected and refused to arbitrate, claiming that the agreement containing the arbitration clause had been timely revoked. Subsequently plaintiff filed this lawsuit seeking to enjoin defendant from proceeding to arbitration. When the trial court ruled in favor of defendant, plaintiff appealed to this court.

Plaintiff contends that the finding of the trial court was against the manifest weight of the evidence and that the trial court erred in denying his motion for summary judgment. Plaintiff asserts that under *Nicholson v. Alderson* (2d Dist. 1952), 347 Ill. App. 496, 107 N.E.2d 39, he effectively revoked the November 6, 1972, real estate brokerage agreement on February 16, 1973, when defendant received his notice of termination.

In *Nicholson* a real estate brokerage contract was executed on March 28, 1951, and provided for the exclusive right to sell the described property for a period of 90 days from the date of the instrument. However, on May 1, 1951, the seller revoked the contract. The court found the agreement not to be one coupled with an interest but to be one revocable at the will of the principal. The broker's authority was thus terminated upon receipt of the letter.

The brokerage agreement in the case at bar, unlike the agreement in *Nicholson*, contained a provision for written notice of 30 days prior to termination. Defendant appears to have received notice of termination of his authority through Idel Rosenfeld, his agent, on February 16, 1973. If such notice was proper, that notice effectuated termination of defendant's authority either on February 16, 1973, or on March 18, 1973, 30 days after defendant's receipt of plaintiff's letter of termination. Issues exist concerning proper notice of revocation of defendant's agency and the effective date of that revocation.

■■ The sale need not be consummated for a real estate broker to recover his commission. (*J. J. Harrington & Co. v. Timmerman* (1st Dist. 1977), 50 Ill. App. 3d 404, 365 N.E.2d 721.) The broker must show that he produced a buyer who was ready, willing and able to purchase the described property on terms specified in the real estate brokerage

agreement. *Sharkey v. Snow* (3d Dist. 1973), 13 Ill. App. 3d 448, 300 N.E.2d 279.

In the instant case defendant produced a buyer who offered to purchase the subject property for $615,000. The price listed in the November 6, 1972, real estate brokerage agreement, however, had been $625,000. Moreover, the record does not reveal when defendant produced the buyer. A single instrument shows the date of the offer to be March 16, 1973, and the date of plaintiff's acceptance to be March 19, 1973. An issue exists as to whether defendant produced a ready, willing and able buyer within the terms of the November 6, 1972, real estate brokerage agreement.

■■ Courts will not extend arbitration agreements either by construction or by implication. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149.) Also, for an issue to go to arbitration, that issue as well as the arbitration provision must be clearly set forth in the contract between the parties. *Silver Cross Hospital v. S. N. Nielsen Co.* (3d Dist. 1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (4th Dist. 1969), 109 Ill. App. 2d 224, 248 N.E.2d 289.

In *Silver Cross Hospital* a construction contract arbitration provision provided for arbitration of "all disputes arising in connection with the contract." The contract further provided that: "Contractor shall at all times protect his excavation from damage by rainwater * * * and all other water. * * * All work damaged by failure to provide protection shall be removed and replaced with new work at the expense of Contractor." When the owner refused to pay the contractor for work he had to do again because of flooding of the premises, the contractor sought arbitration of the dispute. When the trial court ordered a stay of the arbitration proceeding, the contractor appealed. Since the owner did not undertake any contractual obligation to pay the contractor for work necessitated by the flooding, the appellate court affirmed finding no dispute arising in connection with that particular construction contract.

In *Blades* the arbitration provision of a construction contract provided for arbitration of "all disputes arising in connection with this contract." The contract further provided "[t]hat the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to * * * acts of the Owner. * * *" No other contract provision expressly referred to owner-caused delays. When the contractor demanded arbitration, the owner sought a stay order from the trial court. The trial court stayed the arbitration proceedings when it found no dispute to have arisen in connection with the contract. Subsequently the appellate court

affirmed finding no contractual undertaking by the owner to compensate the contractor for losses occasioned by delays or changes of the owner.

This court carefully reviewed Illinois decisions relating to the *judicial* determination of the issue of arbitrability of matters alleged to be arbitrable under arbitration provisions of construction and other contracts in *Roosevelt University v. Mayfair Construction Co.* (1st Dist. 1975), 28 Ill. App. 3d 1045, 1050-1057, 331 N.E.2d 835, 840-44. After distinguishing between arbitration provisions purporting to be specific in designating arbitrable issues and provisions purporting to be generic, we found an implied promissory undertaking by an owner not to occasion extra costs for the contractor by owner-caused delays. The generic arbitration provision in *Roosevelt University* had called for arbitration of "[a]ll claims, disputes and other matters in question arising out of, or relating to the Contract or the breach thereof * * *'." 28 Ill. App. 3d 1045, 1055.

In the instant case the generic arbitration provision calls for arbitration of "[a]ny controversy or claim arising out of or relating to the contract, or the breach thereof. * * *" The contract gave defendant authority for a period of not less than three months to offer for sale, to advertise and to sell the said property for a price of $625,000 or any lesser sum that plaintiff might accept. The agreement was to "remain in effect for the period above specified and [shall] continue thereafter until either party terminates same by thirty (30) days' written notice." Plaintiff sought to terminate the exclusive agreement by a letter received by defendant's agent on February 16, 1973. However, when defendant received no commission for his procurement of a buyer, he initiated arbitration pursuant to the generic arbitration clause quoted above.

The arbitration clause and the notice provision in the case at bar closely resemble those provisions in *General Atomic Co. v. Commonwealth Edison Co.* (3d Dist. 1976), 37 Ill. App. 3d 716, 346 N.E.2d 437. In *General Atomic* a contract for the purchase and sale of nuclear fuel provided that "[a]ny dispute arising from the Contract, including any failure to agree upon any matter where this Contract provides for future agreement of the parties, shall be submitted to arbitration upon request of either party." The contract further provided that either party to the contract could terminate upon the occurrence of *force majeure* circumstances affecting the ability of the other to perform. Subsequently plaintiff General Atomic purported to terminate the contract under its *force majeure* clause. Defendant Edison thereupon demanded arbitration of the controversy pursuant to the contract's arbitration clause. Plaintiff General Atomic then requested the trial court to stay arbitration proceeding on the grounds that no agreement to arbitrate existed since the agreement had been purportedly terminated. In finding that the controversy was arbitrable, the court reasoned that the dispute concerning termination arose from the contract and was thus an arbitrable question under the contract's

arbitration clause. The court, however, expressed no opinion as to the existence of the contract.

■■ While the facts at bar deal with a real estate brokerage agreement rather than a purchase contract, they do concern the application of an arbitration clause. In both *Silver Cross Hospital* and *Blades* appellate courts affirmed stay orders of arbitration proceedings where the contract provisions did not include the issues sought to be arbitrated. In *General Atomic* the termination provisions were written into the contract, and the appellate court affirmed the trial court's dismissal of a complaint seeking a stay of arbitration proceedings because the termination provisions were within the scope of the arbitration clause. The contract in the instant case contained notice requirements for its termination. The generic arbitration clause called for arbitration of "[a]ny controversy or claim arising out of or relating to the contract or the breach thereof. * * *" We believe that the question of sufficient notice of termination as well as the issue surrounding procurement of a ready, willing and able buyer are within the scope of the generic arbitration clause under both *Roosevelt University* and *General Atomic*. (See also *School District No. 46 v. Del Bianco* (2d Dist. 1966), 68 Ill. App. 2d 145, 215 N.E.2d 25.) We express no opinion concerning the propriety of the notice of termination, the effective date of termination or the presentation of a ready, willing and able buyer.

Accordingly the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.