GEORGE GODARE, Plaintiff-Appellee, *v.* STERLING STEEL CASTING CO., Defendant-Appellant.

Fifth District    No. 80-381

Opinion filed April 7, 1981.—Rehearing denied June 30, 1981.

J. F. Schlafly and John Schlafly, both of Schlafly, Godfrey & Fitzgerald, of Alton, for appellant.

C. E. Heiligenstein and Brad L. Badgley, both of Belleville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

George Godare, plaintiff-appellee, brought this action in the Circuit Court of St. Clair County alleging that Sterling Steel Casting Co. (Sterling Steel), defendant-appellant, wrongfully breached an agreement to pay pension benefits. Defendant requested that the trial court order plaintiff to arbitrate his claim. The court denied defendant's request. Sterling Steel appeals pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1979, ch. 110(A), par. 304(a)).

George Godare injured his back during the course of his employment on July 10, 1975. At the time, Godare was employed by Sterling Steel and was a member of the United Steel Workers of America, Local 1095, AFL-CIO. Pursuant to an agreement between Sterling Steel and plaintiff's union a pension agreement was established on October 1, 1957, and according to defendant "* * * has been in full force and effect continuously from 1957 until the present." The pension agreement provided benefits to any employee who became permanently incapacitated. The agreement provided:

"If any difference shall arise between the Company and any Employee as to whether such Employee is or continues [sic] permanently incapacitated within the meaning of section 1, paragraph 2, such difference shall be resolved as follows:

The Employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by a duly authorized representative of the International

Union. If they shall disagree concerning whether the Employee is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the Employee and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the company and the Union."

Plaintiff was examined by an orthopedic surgeon on May 2, 1976, and was found to be permanently disabled. On July 7, 1976, the Illinois Industrial Commission also concluded that Godare suffered total and permanent disability. That decision was affirmed by the supreme court on January 8, 1979. Plaintiff applied for pension benefits on October 26, 1977. Sterling Steel wrote to plaintiff on three occasions requesting that he be examined by a physician appointed by Sterling Steel. Plaintiff failed to comply with defendant's request.

Subsequently, plaintiff filed this action against defendant on April 2, 1979. Sterling Steel filed a motion to dismiss Godare's complaint on May 2, 1979, which was denied. On August 9, 1979, defendant filed its answer and a motion for summary judgment which was denied. Thereafter, defendant filed a counterclaim on February 19, 1980, and subsequently an amendment thereto requesting for the first time that the court order plaintiff to submit his claim to arbitration. Plaintiff responded by filing a motion to dismiss the counterclaim which the court granted on the ground that the issue of Godare's permanent incapacity had been "mooted" by the Industrial Commission's finding and therefore was not an issue requiring arbitration.

Defendant contends that the circuit court erred in dismissing its counterclaim. Sterling Steel maintains that the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*) and Federal labor policy require that plaintiff be compelled to arbitrate his claim for pension benefits. Plaintiff argues that the circuit court's dismissal was proper because plaintiff was not bound to arbitrate his claim under the language of the contract. Also, plaintiff contends that the decision of the Industrial Commission was res judicata, thus barring defendant from disputing plaintiff's disability.

Both parties apparently assume that the agreement executed by the Union and Sterling Steel is an arbitration agreement, even though the term arbitration is never used. The agreement is silent as to what procedure would apply to arbitration, nor does it require that arbitration be the exclusive means to resolve pension disputes to the exclusion of trial of the disputed issues in the circuit court, where, we would note, defendant would be entitled to have plaintiff examined by a doctor of its choice (Ill. Rev. Stat. 1979, ch. 110A, par. 215). We question whether such

a provision meets the requirement that agreements to arbitrate must be clearly set forth in a contract. (*Beider v. Eugene Matanky & Associates, Inc.* (1977), 55 Ill. App. 3d 354, 371 N.E.2d 29.) Be that as it may, we are willing to assume, as have the parties, that the agreement is one to arbitrate disputes as to physical capacity.

■■ Defendant's primary argument is that the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*) requires the circuit court to compel plaintiff to arbitrate his claim. Reliance is placed on section 2(a) of the Act (Ill. Rev. Stat. 1979, ch. 10, par. 102(a)) which provides in part that "[o]n application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration * * *." On its face section 2(a) would appear to require that the court order plaintiff to arbitrate his claim. However, we believe that defendant's reliance on the Uniform Arbitration Act is misplaced.

The Act was adopted by Illinois in 1961 and this fact is acknowledged by defendant in its brief. Nonetheless, defendant assumes that the Act applies in the instant case, but no argument or analysis is given to support such an assumption. Section 23 (Ill. Rev. Stat. 1979, ch. 10, par. 123) provides that:

§23. Repeal. " 'An Act to revise the law in relation to arbitrations and awards', approved June 11, 1917, as amended, is repealed; provided, however, that any agreement entered into prior to the effective date of this Act to submit to arbitration a dispute existing at the date of the agreement shall be governed by said Act approved June 11, 1917; provided further, that this Act does not impair the validity of any proceeding under said Act, approved June 11, 1917, commenced prior to the effective date of this Act."

The Introductory Note preceding the Act (Ill. Ann. Stat., ch. 10, par. 101, Introductory Note, at 401 (Smith-Hurd 1975)) also provides that:

"This Act is the Uniform Arbitration Act, modified in certain respects. This Act was adopted in 1961 and repeals the former Illinois Act entitled 'An Act to revise the law in relation to arbitrations and awards', approved June 11, 1917, as amended. *The Act is not retroactive and applies only to agreements made subsequent to its effective date, August 24, 1961.*" (Emphasis added.)

■■ A contract between two parties incorporates the law as it exists at the time the contract is executed. (*Belleville Advocate Printing Co. v. County of St. Clair* (1929), 336 Ill. 359, 168 N.E. 312.) When Sterling Steel and the Union entered into the contract in 1957 to provide pension benefits the Uniform Arbitration Act was not in effect. The predecessor of the present act differs significantly in several important respects. The most important

difference is that the previous act applied only to existing disputes and not to future disputes. (*Cocalis v. Nazlides* (1923), 308 Ill. 152, 139 N.E. 95; also see Ill. Ann. Stat., ch. 10, par. 101, Introductory Note, at page 401 (Smith-Hurd 1975).) Assuming that the 1917 arbitration and awards act was incorporated into the pension agreement, defendant would have no right to compel plaintiff to arbitrate his claim. The dispute between Sterling Steel and Godare was not in existence at the time the pension agreement was executed. Therefore, the arbitration clause was an invalid attempt to compel arbitration of a future dispute.

A similar result was reached in *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72. In *Horwath* the trial court dismissed the plaintiff's suit involving the owners of beneficial interests in a land trust. The land trust agreement was executed in 1949, 12 years before the Uniform Arbitration Act was adopted and contained a clause providing for the arbitration of any dispute. The trial court dismissed plaintiff's claim because of her failure to exhaust her remedy in arbitration. The appellate court reversed, finding that the arbitration agreement was an unenforceable attempt to arbitrate future disputes which was not allowed under the law at the time the contract was executed.

■■ Applying *Horwath* to the instant case, we find that the trial court correctly dismissed the defendant's counterclaim. Defendant could not compel plaintiff to arbitrate the dispute over disability because the dispute was not in existence at the time the agreement was executed. Only if plaintiff agreed to arbitration after the dispute arose could defendant compel plaintiff to arbitrate his claim. *White Eagle Laundry Co. v. Slawek* (1921), 296 Ill. 240, 129 N.E. 753.

Defendant insists that we must defer to Federal labor policy favoring the arbitration of disputes. Reliance is placed on *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614. However, *Republic Steel* only requires that "* * * individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." (379 U.S. 650, 652, 13 L. Ed. 2d 580, 583, 85 S. Ct. 614, 616.) Where the contract grievance procedure only requires arbitration of existing disputes where both parties have consented to submission, there is no requirement under Federal labor policy that plaintiff submit his claim to arbitration.

■■ Moreover, we believe that the trial court's result was correct for a totally independent reason. In *Gateway Drywall & Decorating, Inc. v. Village Construction Co.* (1979), 76 Ill. App. 3d 812, 395 N.E.2d 613, we found that the right to arbitrate could be waived. The *Gateway* case applied the reasoning of *Applicolor, Inc. v. Surface Combustion Corp.* (1966), 77 Ill. App. 2d 260, 222 N.E.2d 168. *Applicolor* held that a "* * *

contractual right to arbitration may be waived by a party through conduct inconsistent with the arbitration clause, * * *." (77 Ill. App. 2d 260, 266-67, 222 N.E.2d 168, 171.) The inconsistent conduct in *Applicolor* which resulted in the waiver of defendant's right to arbitrate was the filing of a motion for summary judgment. The court concluded that "* * * we have no doubt that defendants did submit to both federal and state courts the 'controversy' between the parties in the light in which they saw it—as an issue of law. And in so doing, they did, in our opinion, waive their right to have that controversy decided pursuant to the arbitration provisions of the contract." (*Applicolor*, 77 Ill. App. 2d 260, 267, 222 N.E.2d 168, 171.) Thus, even if the Uniform Arbitration Act did apply, defendant waived its right to arbitration by asking for summary judgment prior to asserting its arbitration defense.

Inasmuch as we have determined that the defendant could not compel plaintiff to arbitrate his claim, it is unnecessary to address the parties' contentions as to the completeness of the arbitration clause and the res judicata effects of the Industrial Commission decision.

The order of the Circuit Court of St. Clair County is affirmed and the cause is remanded for further proceedings consistent with this decision.

Affirmed and remanded.

KASSERMAN, P. J., concurs.

Mr. JUSTICE WELCH, specially concurring:

The defendant's counterclaim states that "a pension agreement was executed under date of October 1, 1957, by and between defendant and Local Union 1095, United Steel Workers of America, AFL-CIO," and that "said pension agreement has been in full force and effect continuously from 1957 until the present." The agreement provided by its own terms that it "shall remain in effect until midnight, September 30, 1958." Nothing in the pleadings demonstrates that the agreement was renegotiated or otherwise could be said to have been entered into after the effective date of the Uniform Arbitration Act. Since the defendant did not show that the Act applied to the agreement, and since, before the enactment of the Act, agreements to arbitrate future disputes were against public policy (see *White Eagle Laundry Co. v. Slawek*), that counterclaim was properly dismissed.

I concur with the majority opinion insofar as it is based on this failure to plead facts sufficient to show that the Uniform Arbitration Act applies to the pension agreement.