PHILLIP LEHMAN *et al.*, Plaintiffs-Appellees, *v.* EUGENE MATANKY & ASSOCIATES, INC., Defendant-Appellant.

First District (5th Division)    No. 81-1061

Opinion filed July 9, 1982.

Hollobow and Taslitz, of Chicago (Barry B. Kreisler and Alan B. Castator, of counsel), for appellant.

Krause & Krause, of Mt. Prospect (David S. Krause and Carolyn H. Krause, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from the entry of an order granting summary judgment to plaintiffs and raises the following issues: (1) whether a dispute concerning the termination of the contract was within the scope of the arbitration clause so that the cause should have proceeded to arbitration and, in the alternative, (2) whether genuine issues of material fact remain concerning the termination of the listing agreement which precluded the entry of summary judgment in favor of plaintiffs.

Material to our disposition are the following facts. One September 18, 1979, plaintiffs entered into a written real estate brokerage agreement whereby they employed Matanky as their exclusive sales agent to secure a buyer for the property located at 500 W. Touhy Avenue in Des Plaines, Illinois. The subject property was owned by Lehman Mobile Homes Park, Inc., an Illinois corporation, all of whose stock was owned in joint tenancy by the plaintiffs.

This agreement provided that Matanky's employment as plaintiffs' exclusive agent was "to extend for a period of not less than six months with authority to offer for sale, to advertise, to place a sign thereon and to sell said property * * *."

The brokerage contract also contained a notice requirement for termination of the exclusive agency relationship and a generic arbitration clause. The notice requirement stated: "This agreement shall remain in

effect for the period above specified and thereafter until terminated by me or you in writing, giving the other party thirty (30) days prior notice."

The generic arbitration clause provided in pertinent part: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof." The subject property was placed on the market for an asking price of $1,200,000. The brokerage contract was executed by the Lehmans and by Ken Baldwin and Grace Stample as agents for defendant.

On February 11, 1980, plaintiffs' attorney Carolyn Krause sent a letter to the defendant's office, notifying it that "in accordance with the Real Estate Listing Agreement dated September 18, 1978, we are hereby giving you notice that the said agreement shall terminate on March 18, 1980."

Ken Baldwin replied to the Lehmans on February 13, 1980, acknowledging receipt of their letter "terminating our exclusive as of March 18, 1980." The letter further stated: "We will keep the property listed in our cooperative sales agency until the expiration date, and meanwhile will continue our efforts to sell the property even after the exclusive expires unless you advise us otherwise or until it is sold."

On March 19, 1980, plaintiffs' attorney mailed a rough draft of a proposed real estate contract between the plaintiffs and Patrick Lasco and Charles Drew. The rough draft was not signed by any of the named parties.

On April 14, 1980, Ken Baldwin submitted an offer to purchase the subject property to the plaintiffs which was on the same form as the March 19 draft. However, the terms of the original offer had been altered to provide, *inter alia*, that the Lehmans would pay a broker's commission to the defendant in the amount agreed to in the exclusive brokerage agreement. The April 4 offer was signed by a new prospective purchaser, Henry Criz, in place of Lasco and Drew, whose names have been deleted.

For reasons not revealed in the record, neither sale was consummated, nor did the Lehmans ever accept either offer by signing a contract.

On July 5, 1980, the American Arbitration Association notified the Lehmans that Matanky had filed a demand for arbitration of the issue of the $84,000 brokerage commission. The Lehmans protested that filing, and contested the jurisdiction of the American Arbitration Association by claiming that the brokerage agreement which provided for arbitration had been properly terminated and no longer compelled arbitration of the issue.

Plaintiffs subsequently filed this lawsuit seeking to enjoin defendant from proceeding to arbitration. Following cross motions for summary

judgment, the trial court ruled in favor of plaintiffs, and it is from this order that defendant appeals.

## OPINION

Defendant initially contends that the trial court erred in finding that the parties had not agreed to arbitrate a dispute concerning the termination of the contract.

Section 2(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 102(a)) provides:

> "(a) On application of a party showing an [arbitration] agreement * * *, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

Under the Uniform Arbitration Act, adopted in Illinois in 1961, the trial court is authorized to determine arbitrability if one of the parties denies it has agreed to arbitrate. The chief effect and benefit of the 1961 Act is that it grants legal enforceability to arbitration agreements to settle future as well as existing disputes. *Flood v. Country Mutual Insurance Co.* (1967), 89 Ill. App. 2d 358, 232 N.E.2d 32, *rev'd on other grounds* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.

However, it is well settled that since arbitration is a matter of contract, a party cannot be required to arbitrate any dispute which he had not agreed to arbitrate (*Butler Products Co. v. Unistrut Corp.* (7th Cir. 1966), 367 F.2d 733; *Atkinson v. Sinclair Refining Co.* (1962), 370 U.S. 238, 241, 8 L. Ed. 462, 466, 82 S. Ct. 1318, 1320-21), and it is for the courts to determine whether the claim is "on its face" covered by the contract. *United Steelworkers v. American Manufacturing Co.* (1960), 363 U.S. 564, 568, 4 L. Ed. 2d 1403, 1407, 80 S. Ct. 1343, 1346.

■■ Thus, we note initially that the issue as to whether the brokerage contract in the present case required arbitration by its terms was properly decided by the trial court and not by an arbitrator. *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1980), 87 Ill. App. 3d 246, 408 N.E.2d 1026.

As for the proper perspective to apply, Illinois courts have developed a much stricter standard of review for arbitration of disputes which arise in the context of a commercial undertaking, in contrast to the more liberal standard preferred by the courts in the delicate sphere of collective bargaining agreement disputes. *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647.

■■ The applicable standard of review for a commercial arbitration

dispute provides, in essence, that the parties are only held bound to arbitrate those issues which must be "stated in the contract between the parties in crystal clear language unextended and unenlarged either by construction or by implication." (*Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 226, 248 N.E.2d 289, 290; *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149, 151.) As one author has commented, "This has almost led to the requirement that the settling of a dispute by the method of arbitration must be spelled out *expressis verbis* in the contract in order to give it effectiveness." Herzog, *Judicial Review of Arbitration Proceedings—A Present Need*, 5 DePaul L. Rev. 14, 19 (1955).

We turn now to consider defendant's argument that the issue of termination should have been decided by the arbitrator and not by the trial court. In the present case the brokerage agreement of September 18, 1979, provided for arbitration of any dispute arising in connection with the agreement, but also contained a provision for the termination of this agreement after six months had elapsed and proper notice had been given.

Relying primarily upon *Beider v. Eugene Matanky & Associates, Inc.* (1977), 55 Ill. App. 3d 354, 371 N.E.2d 29, defendant contends that the issue of termination of the arbitration agreement was within the scope of the arbitration clause and therefore should have been decided by the arbitrator. We do not agree.

In *Beider*, the generic arbitration provision and the notice requirement involved were identical to the instant case inasmuch as the same defendant in the present action was also a party to that suit. The *Beider* contract, however, gave Matanky authority for a period of not less than three months to offer the property for sale. There, the 30-day notice period, calculated from February 16, 1973, expired on March 18, 1973. However, on March 16, 1973, defendant procured an offer to purchase the property which plaintiff accepted on March 19, 1973.

When defendant sought arbitration of the dispute, the plaintiff requested a stay of the arbitration proceeding which was subsequently denied by the trial court. Unlike the present case, the *Beider* court specifically found that issues existed concerning proper notice of revocation of defendant's agency and the effective date of that revocation. The appellate court affirmed, finding that the question of sufficient notice of termination as well as the issues surrounding procurement of a ready, willing and able buyer were within the scope of the generic arbitration clause.

Defendant also cites as authority the case of *General Atomic Co. v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 716, 346 N.E.2d 437, which was relied upon by the *Beider* court. In *General Atomic*, a contract

for the purchase and sale of nuclear fuel provided that " '[a]ny dispute arising from this Contract, including any failure to agree upon any matter where this Contract provides for future agreement of the parties, shall be submitted to arbitration upon request of either party.' " (37 Ill. App. 3d 716, 719.) Either party to the contract could terminate upon the occurrence of *force majeure* circumstances affecting the ability of the other to perform. Unanticipated nuclear regulatory licensing delays subsequently prompted plaintiff *General Atomic* to terminate the contract under its *force majeure* clause, and similar court action to stay arbitration ensued. The appellate court held that whether the plaintiff had properly exercised the *force majeure* clause constituted a dispute arising from the contract, and was thus an arbitrable question under the contract's arbitration clause.

We believe that the cases relied upon by Matanky are distinguishable from the case at bar. The present case differs in the following three respects: (1) the brokerage agreement had been unambiguously and effectively terminated, unlike *Beider*, where issues of proper notice and revocation remained; (2) the agreement was not terminated as a result of a party's breach of contract, but by the expiration of its specified term, in contrast to *General Atomic*, where issues concerning revocation remained; and (3) the Criz offer was never accepted by the plaintiffs and the property had not been sold as of the time of summary judgment.

However, the thrust of defendant's argument is that the plaintiffs' letter of February 11, 1980, did not operate to terminate the listing agreement. Defendant persistently argues that plaintiffs' notice of revocation letter of February 11, 1980, somehow did not effectively and unequivocally terminate the brokerage agreement, or, apparently in the alternative, that the letter merely operated to terminate the defendant's exclusive agency while an agency relationship continued in force and effect. Defendant directs our attention to its reply letter of February 13, 1980, which states: "We will keep the property listed * * * until the expiration date, and meanwhile will continue our efforts to sell the property even after the exclusive expires unless you advise us otherwise or until it is sold." We are not persuaded by the illogic of this argument.

■■ As a general rule, a broker's contract of employment is subject to being terminated by the principal's revocation of the authority granted to the broker at any time and under any circumstances. (5 Ill. L. & Prac *Brokers* sec. 28 (1953).) Illinois decisional law indicates that the ordinary contract of agency for the sale of real estate is a unilateral offer and can be prematurely terminated at any time before it is accepted by the procurement of a purchaser, provided that the revocation is in good faith. *Nicholson v. Alderson* (1952), 347 Ill. App. 496, 107 N.E.2d 39.

■■ It is well established that a contract which is not ambiguous in its

expression of duration is not subject to judicial construction. (*Donahue v. Rockford Showcase & Fixture Co.* (1967), 87 Ill. App. 2d 47, 230 N.E.2d 278.) Fundamental contract law mandates that the terms of a written contract bind the parties as to all of its provisions, including the manner in which the term granted may be terminated (*Cox v. Grant* (1978), 57 Ill. App. 3d 922, 373 N.E.2d 820), and such a stipulation will be enforced when made in good faith. (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) Thus, the mere fact that the parties by their acts and declarations indicate an intention to treat a written contract as continuing after the time prescribed in it for its termination will not have the effect of continuing such a contract, although it may show a subsequent oral agreement on the same terms. 17A C.J.S. *Contracts* sec. 449 (1963).

■■ In the present case, it is clear that there was no existing contract calling for arbitration after March 18, 1980. As one author has commented: "While the contract provides for arbitration of disputes as to the 'meaning, performance, non-performance or application' of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words, cannot make an arbitrable issue * * *" (citing *International Association of Machinists v. Cutler-Hammer, Inc.* (1947), 271 App. Div. 917, 918, 67 N.Y.S.2d 317, 318). (See Herzog, *Judicial Review of Arbitration Proceedings—A Present Need*, 5 DePaul L. Rev. 14, 21 (1955).) We believe that this analysis is applicable to the case at bar.

■■ Applying the foregoing principles to the present case, we find that the brokerage agreement was totally and unequivocally terminated pursuant to the notice requirement contained therein. The subsequent offer to purchase did not arise out of the terminated contract, which was no longer in force and effect.

Accordingly, we conclude that the issue of termination of the contract was not within the scope of the arbitration clause.

Finally, we consider defendant's contention that the trial court erred in granting summary judgment due to the existence of genuine issues of material fact.

■■ A careful review of the record discloses that defendant has never filed any counteraffidavits, nor have they at any time disputed any of the documents relied upon by the plaintiffs. Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

■■ We therefore find that summary judgment in the present case was a proper procedure where only the construction and validity of the agree-

ment were at issue. *Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.