Citizens Savings & Loan Association, Belleville, Illinois, Collinsville Building & Loan Association, Collinsville, Illinois, Equity Savings Association, East St. Louis, Illinois, First Federal Savings & Loan Association of East St. Louis, Illinois, First Mutual Savings & Loan Association, Belleville, Illinois, Greater Belleville Savings & Loan Association, Belleville, Illinois, Home Federal Savings & Loan Association of Collinsville, Illinois, Midwest Home Savings & Loan Association, Belleville, Illinois, Security Savings Association, Belleville, Illinois, State Savings & Loan Association, East St. Louis, Illinois, Union Savings & Loan Association, Caseyville, Illinois, Plaintiffs-Appellants, and Industrial Savings & Loan Association, Plaintiff-Co-Appellant, v. Joseph E. Knight, Director of Financial Institutions, State of Illinois, Francis E. Bihss, et al., Defendants-Appellees.

Gen. No. 10,760.

Fourth District.

August 25, 1966.

234

235

Chapin & Chapin, of Springfield, Listeman, Bandy & Hamilton, and Kassly, Weihl, Carr & Bone, of East St. Louis (Rex Carr, of counsel), for appellants.

Drach, Terrell & Deffenbaugh, of Springfield, Goldenhersh & Goldenhersh, of East St. Louis (Michael A. Katz, of counsel), and William G. Clark, Attorney General, of Chicago (Richard A. Michael and John J. O'Toole, of counsel), for appellees.

SPIVEY, J.

Plaintiffs-appellants, twelve savings and loan associations, together with plaintiff-coappellant, Industrial Savings & Loan Association, appeal from an order of the Circuit Court of Sangamon County, Illinois, which court affirmed an order of the Director of Financial Institutions approving the application of defendants-appellees to organize Edgemont Savings and Loan Association in the Edgemont area of East St. Louis, Illinois.

This case is a companion case in the stormy litigation between Industrial Savings & Loan Association and the McRoberts group, defendants-appellees herein, to locate their place of business in the Edgemont area.

Industrial Savings & Loan Association's application to relocate was denied by the Director. The Director's decision was affirmed by the Circuit Court of St. Clair County, Illinois, and again affirmed by the Fifth District Appellate Court of Illinois. (Industrial Savings & Loan Association v. Knight, et al., 67 Ill App2d 416, 214 NE2d 910.)

Industrial Savings & Loan Association, hereafter referred to as "Industrial" has injected its application de-

nial to relocate its place of business into this appeal. This issue was settled in the Fifth District Court appeal and to the extent it has been alluded to will not be considered.

Defendants-appellees, hereinafter referred to as "Edgemont," filed an application to organize a savings and loan association in the Edgemont area on July 11, 1960. This application was denied on September 27, 1960. Following a hearing requested by Edgemont, the Director affirmed his denial on March 4, 1961. An appeal was perfected to the Circuit Court of St. Clair County, which court, on February 16, 1962, affirmed the decision of the Director.

Edgemont reapplied to the Director for a permit to organize a savings and loan association in the same area on May 7, 1962. This application was made by some of the original applicants and others. It contained a three-year upgraded survey of the proposed territory. On January 10, 1963, the Director ordered a hearing on this application under section 2–3 of the Savings and Loan Act. (c 32, § 723, Ill Rev Stats, 1963.)

Hearings under this order were held on March 14, April 25 and April 26 of 1963. The Director approved Edgemont's application and issued a conditional permit to organize on February 24, 1964.

Separate complaints for hearing as provided by sections 7–20, 7–21 of the Savings and Loan Act (c 32, §§ 860, 861, Ill Rev Stats, 1963) were filed by Industrial and plaintiffs-appellants.

A hearing on these complaints was afforded on May 20, 1964. The Director, on August 31, 1964, affirmed his decision of February 24, 1964, approving Edgemont's application and his issuance of a conditional permit to organize.

Thereafter followed the administrative review proceeding in the Circuit Court of Sangamon County resulting in the decision, the subject of the instant appeal.

Plaintiffs-appellants contend that the decision of the Director of March 4, 1961, affirming his decision of

September 27, 1960, denying the application of Edgemont, was res judicata as to the issues raised by the second application; that the decision of the Director on February 24, 1964, affirmed by the Director on August 31, 1964, granting Edgemont the conditional permit to organize is void for lack of findings; and the Director's decision of February 24, 1964, affirmed on August 31, 1964, was contrary to the manifest weight of the evidence.

Industrial contends that a *new* savings and loan association is not needed in the East St. Louis area and that the establishment of Edgemont cannot be done without undue injury to Industrial.

Plaintiffs-appellants argue that the Director's order of March 4, 1961, disapproving Edgemont's application, and its subsequent affirmance by the Circuit Court of St. Clair County on February 16, 1962, was res judicata as to Edgemont's second application approved on February 24, 1964, and affirmed by the Director on August 31, 1964, the subject of the instant appeal.

The extension of the doctrine of res judicata from that of purely judicial proceedings into the field of administrative law has been anything but uniform in the various states. In general it has often been said that this doctrine has no application to administrative decisions. The exceptions generally recognized in the main hinge upon the nature of the administrative action involved, particularly in cases where the administrative agency is not a party to the proceedings and those involving conflicting claims of parties coming before it. In that respect the action is sometimes referred to as "quasi-judicial."

In some states the doctrine of res judicata is applied to administrative decisions which have been affirmed or reversed by a judicial tribunal. In most of these cases the theory prevails that the res judicata effect, if any, attached to the court's judicial judgment rather than the administrative decision, and this is frequently so when the administrative agency is in the exercise of quasi-

judicial powers. (2 Am Jur2d, Administrative Law, § 499.) For example, City of Jackson v. Holliday, 246 Miss 412, 149 So2d 525, a zoning case, cited by plaintiffs-appellants.

In another case cited by plaintiffs-appellants, City of Miami Beach v. Parking Facilities, Inc. (Fla), 120 So2d 209 (1960), a zoning case, the court in referring to a prior decision of that court recognized that in zoning cases the doctrine of res judicata should be used with caution because of changes in conditions.

■ Illinois does not adhere to the theory of affixing the effect of the doctrine of res judicata to the court's judgment rather than to the administrative decision. It was said in 222 East Chestnut St. Corp. v. 199 Lake Shore Drive, Inc., et al., 24 Ill App2d 545, 165 NE2d 71, "It has consistently been held that a former adjudication does not rest on the opinion of the court of review, but on the judgment of the trial court which has become final through affirmance. (Citing cases)."

■ We believe the rule followed in Illinois is expressed in 50 CJS, Judgments, § 624, which states, "A judgment affirmed on appeal is final and res judicata provided the judgment is of such nature that it would have been final and res judicata in the absence of an appeal, but if the judgment itself would not prevent a second action, its affirmance on appeal will not give it that effect, there being nothing to show that any question was passed on except the one on which judgment below was granted."

We see no sound reason why this application should not be applied to judicial reviews of administrative decisions, particularly in the light of Illinois decisions.

■ ■ In an appeal from the affirmance of an administrative tribunal under the Administrative Review Act which affirmed the decision of a Liquor License Appeal Commission it is stated, "If Burnette should apply for another license and if there should be another appeal

240

to the commission, a new record would be made before that commission. A prior determination of an administrative body is not res judicata in subsequent proceedings before it. Illinois Power & Light Corp. v. Commerce Commission, 320 Ill 427, 151 NE 236; ILP, Administrative Law and Procedure, c 2, § 30. An administrative review agency has the power to deal freely with each situation that comes before it regardless of how it may have dealt with a similar or even the same situation in a previous proceeding. Mississippi River Fuel Corp. v. Illinois Commerce Commission, 1 Ill2d 509, 116 NE2d 394." Daley v. License Appeal Commission, et al., 55 Ill App2d 474, 205 NE2d 269.

█ It is said in ILP, Administrative Law and Procedure, c 2, § 30, "Res judicata. A determination of an administrative body is not res judicata in subsequent proceedings even though such body was acting in its judicial capacity in making the determination."

In the Mississippi River Fuel Corporation case it was stated, "Mississippi contends that the Commission is bound by an earlier order entered by it on January 14, 1949, in a proceeding docketed by it as No. 36,128, in which it found that Mississippi in making these industrial sales was not being conducted as a public utility, and that the sales in question were not for public use. This order was entered as a result of a citation issued by the commission on March 23, 1948. This citation was the first effort ever made by the commission to take jurisdiction over Mississippi. The commission, however, is not a judicial body, and its orders are not res judicata in later proceedings before it. It was so held in Illinois Power and Light Corp. v. Commerce Comm., 320 Ill 427, and in other cases. The concept of public regulation includes of necessity the philosophy that the commission shall have power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding."

241

■ Further in almost every instance the effect of res judicata does not apply to an administrative decision affirmed or reversed by a judicial tribunal when there has been a change in circumstances.

The instant application was filed with the Director on May 7, 1962, a year and ten months after the first application. Hearings on this application were held in March and April of 1963, and the decision of the Director issuing Edgemont's conditional permit to organize was issued on February 24, 1964.

The second application contained an upgraded survey of the area for three years as well as exhibits showing assets of four East St. Louis savings and loan associations as of November 20, 1962; assets of savings and loan associations in Belleville, Collinsville and East St. Louis over a period from December 31, 1959, to November 30, 1962; Edgemont's pro forma balance sheet; number of associations in area cities; 1960 population of these cities, and number of people per association; condition of the bank of Edgemont dated December 31, 1962, and a statement of its condition as of March 12, 1963; and a general highway map of St. Clair County.

Absent from the record is the first application of Edgemont as well as the report of proceedings thereunder. Without this we are unable to state whether or not there has been a change in conditions between the prior proceedings and the instant proceedings relating to Edgemont.

■ It is axiomatic in Illinois that a party invoking the doctrine of res judicata has the burden of proving the existence and character of the judgment or decree as well as the legal effect with relation to the matters alleged to be concluded by it. (Gillies v. Little Vermilion Special Drain. Dist., 401 Ill 344, 81 NE2d 916.)

■ The existence of a judgment relied upon as a bar is to be proved by the production and inspection of

242

the record. (People ex rel. McDonough v. Jarecki, 352 Ill 207, 185 NE 570).

██ The court will not take judicial notice of a prior judgment pleaded in bar or an estoppel even though such judgment and its supporting papers are on file with the court. (50 CJS, Judgments, 836.)

██ Based upon the foregoing observations we are of the firm belief that the doctrine of res judicata is not applicable in the instant case for the several reasons discussed.

Industrial seriously argues that the Director's decision of February 24, 1964, is not based upon any evidence in that the transcript of the evidence of the hearings on Edgemont's application in March and April of 1963, was erroneously admitted in evidence at the hearing on May 20, 1964. It may be noted that counsel for Industrial was present at the hearings in March and April, 1963, and cross-examined the witnesses.

The twelve other plaintiffs-appellants stipulated that the testimony taken in the hearings of March and April, 1963, be entered into the record as taken here. Industrial objected to the inclusion of that testimony in the record.

Industrial further says in that respect that Edgemont offered no evidence on the May 20, 1964, hearing.

We think this argument is devoid of merit.

Section 2–2 of the Savings and Loan Act requires the applicants shall submit with their application statements, exhibits, maps and other data, which data shall be sufficiently detailed and comprehensive to enable the Director to pass upon the application.

Section 2–3 of the Savings and Loan Act provides in part as follows, "The Director may hear evidence to determine his findings at any time prior to the issuance of a permit to organize."

Section 1–10 of the Savings and Loan Act provides in part, "(d) 'Director': The Director of Financial Institu-

tions, or some person authorized by him to act in his stead."

Section 7–20 of the Savings and Loan Act provides that any person who deems himself aggrieved by any decision, order or action of the Director may receive a hearing as provided in sections 7–21 through 7–24 of the Act.

Section 7–21 of the Savings and Loan Act provides, "The Director may upon his own motion and shall upon the verified complaint in writing of any person setting forth facts which if proved would constitute grounds for reversal or change of any decision, order, or action grant a hearing thereon. . . . At the time and place fixed in the notice, the Director or his authorized agent, hereinafter referred to as the Hearing Officer, shall proceed to hear the charges and both the respondent and all other parties to the action and the complainant shall be accorded ample opportunity to present in person or by counsel such statements, testimony, evidence and argument *as may be pertinent to the issues. . . .*" (Emphasis supplied.)

 The hearing under section 7–21 is based solely on the verified complaint by the party who deems himself aggrieved and who proves grounds for reversal or change of the decision. This is the only pertinent issue before the Director. It must follow that this section recognizes that there is a decision in existence. This decision, the application and hearings, if ordered, are all an integral part of the proceedings as a whole, otherwise there would be nothing before the Director to reverse or modify. To say that the proceedings leading up to the hearing under section 7–21 have vanished and are no longer a part of the record is not based upon any sound reason.

Plaintiffs-appellants contend that the Director's orders lack sufficient findings and are contrary to the manifest weight of the evidence.

The report of proceedings at the hearings in March and April of 1963, constitutes 420 pages plus 21 exhibits,

which included the application for permit to organize the Edgemont Savings and Loan Association.

It would unduly lengthen this opinion to attempt to detail the substance of the evidence and exhibits. We have examined the evidence and exhibits as well as the report of the Hearing Officer, which consists of nineteen single-spaced typewritten pages abstracting the evidence of all the witnesses and setting out his findings and conclusions based thereon.

The Hearing Officer's abstract of the evidence in our opinion fairly states and supports the findings and conclusions of that officer, which among other things found that the population of the Edgemont area exceeds 82,000 persons, or about one-third of the total population of East St. Louis; that other than one savings and loan association there is no other savings and loan association in East St. Louis or Belleville other than in the downtown area of each city; that the proposed capital of the proposed Edgemont association is $400,000; that there has been a constant growth experienced by all the savings and loans as well as the other financial institutions in the East St. Louis-Belleville area in recent years; that the proposed association will not unduly injure other existing associations; that the proposed management assures reasonable success of the association; and that a need exists for an association, and that the public convenience and advantage will be promoted in the community of East St. Louis, and specifically in the Edgemont area.

The Hearing Officer's report on the hearing of May 20, 1964, is divided into two parts, one with reference to Industrial's complaint and one as to plaintiffs-appellants' complaint, pursuant to sections 7–20 and 7–21 of the Savings and Loan Act. The two reports amount to ten single-spaced typewritten pages.

Again examining the abstract of the evidence as to this hearing and the Hearing Officer's reports, it might be

fairly stated that the evidence of Jack D. Murphy was a recitation of Industrial's effort to move their place of business to Edgemont and that the Edgemont area would support *only one* savings and loan association, which should be Industrial.

As to witnesses testifying on behalf of the other twelve savings and loan associations, Richard C. May and C. Allen Watson, it might be said that the evidence of Richard C. May was based upon his interpretation of a report prepared in connection with Southern Illinois University, of which he had no personal verification of the figures, supported by an exhibit showing the percentage of colored as against white population, their respective incomes, and the employment and unemployment situation in East St. Louis, Illinois.

Reference to the testimony of C. Allen Watson indicates that as to the State Savings and Loan Association, of which he was president, the savings had declined in that association between December 31, 1963, and May 18, 1964.

The Hearing Officer concluded that based upon the entire record, together with the evidence of the plaintiffs, no grounds were established for reversal or change in the Director's prior decision.

The order of the Director of February 24, 1964, recites that a transcript of the testimony at the hearing was made; that the report of the Hearing Officer was submitted to him; that he read all the documents and papers appearing in this cause including the transcript of the testimony and exhibits therein, and based thereon he made the appropriate findings required under section 3–4 of the Illinois Savings and Loan Act.

The order of the Director on August 31, 1964, affirming his decision of February 24, 1964, makes the same recitation that he had read all the documents appearing in this case including the transcript of the testimony taken at the hearing of May 24, 1964. As to this hearing

the Savings and Loan Act makes no requirement regarding findings but does provide that a copy of the Hearing Officer's report and the Director's order shall be served upon all respondents and all other parties to the action.

Relating to the order of February 24, 1964, approving the application to organize the Edgemont Savings and Loan Association he is required before issuing approval of the application to find the matters set forth in section 2–4 of the Savings and Loan Act.

The Director may issue a permit based upon the application, statements, exhibits, maps and other data without the necessity of a hearing. (Section 2–2.) He may also in his discretion order a hearing to assist in determining his findings. (Section 2–3.)

It would be an anomaly to say that the Director could not consider the findings and conclusions of the Hearing Officer when the Director may authorize others to act in his stead, together with the application, pertinent exhibits and the evidence adduced upon hearings in making his decision.

■■ Similar findings were contained in the case of Harvey Federal Savings & Loan Ass'n v. Becker, 25 Ill2d 464, 185 NE2d 216, wherein it was said, "These are the requirements prescribed by section 2–4 of the statute for issuance of a permit, and there is no contention that any have been omitted. The argument that they are not specific enough has no merit insofar as the present appeal is concerned. We think it was incumbent upon the plaintiff to specify in what respect it considered the permit to have been improperly granted. Section 7–21 provides that a hearing shall be granted 'upon the verified complaint in writing of any person *setting forth facts* which if proved would constitute grounds for reversal or change of any decision, . . . At the time and place fixed in the notice, the Director or his authorized agent, hereafter referred to as the hearing officer, shall proceed to hear *the charges* and both the respondent and all other parties

to the action and the complainant shall be accorded ample opportunity to present in person or by counsel such statements, testimony, evidence and argument as may be pertinent to *the issues.'* "

 Plaintiffs-appellants cite Brinker Trucking Co. v. Commerce Comm., 19 Ill2d 354, 166 NE2d 18, a Commerce Commission case. It is stressed therein that the making and rendering of findings concerning the subject matter and facts inquired into and to enter its order based thereon are mandatory under the express wording of the Act. No such mandatory requirement is placed upon the Director of Financial Institutions by the Savings and Loan Act.

"The General Assembly, in expressing the policy of the Illinois Savings and Loan Act, stated that such business being so integrated with the financial institutions of the State affected the public interest and should be supervised as a business affecting the economic security and general welfare of the people of Illinois, and that the Act should be liberally construed to promote and foster the purposes of savings and loan associations." Industrial Savings & Loan Ass'n v. Knight, et al., 67 Ill App2d 416, 214 NE2d 910.

 The Supreme Court, in Skokie Federal Savings & Loan Ass'n v. Becker, 26 Ill2d 76, 185 NE2d 861, in recognizing the role of the Director of Financial Institutions said, "It should be noted that the findings required by the statute and made by the Director are not simple findings of readily ascertainable facts, but represent the application of expert administrative judgment to the evidentiary facts. Such terms as 'need,' 'public convenience and advantage,' 'reasonable probability of the success,' and 'undue injury' are not facts that are susceptible to precise proof or measurement by any satisfactory judicial yardstick. They involve matters of judgment and policy. Under such circumstances, a court may not substitute its

judgment for that of the administrative agency and should not reverse the order of the administrative agency unless the judgment of the agency is without substantial support in the record."

In our judgment the record supports the findings and orders of the Director and that his action was neither arbitrary nor against the manifest weight of the evidence. We will not substitute our judgment for that of the Director so long as his judgment is not without substantial support in the record.

The decision of the Director of Financial Institutions and the Circuit Court of Sangamon County is affirmed.

Affirmed.

TRAPP, P. J. and SMITH, J., concur.