BOARDMAN, Judge.
C. C. Hunter, plaintiff below, appeals a final judgment “confirming” the action of the Board of Trustees of the City Pension Fund for Firefighters and Police Officers of the City of Tampa (the Board) denying appellant an in-line-of-duty pension and awarding him only a nonline-of-duty pension. Appellant contends that the evidence before the trial court was insufficient to support its ruling. We agree and reverse.
Appellant was employed for sixteen years as a patrolman with the Tampa Police Department. On November 30, 1973, he was injured, fracturing three ribs, when he was chasing a suspect and fell over a concrete bench. As a result of this accident appellant also complained of back pain.
The fractures healed and appellant returned to work. At first he was on limited duty, but was subsequently told by his treating physician, Dr. L. J. Cordrey, that he could return to “full activity.”
A second accident occurred on June 15, 1974, in which appellant claimed he received a jolt from a dip in the road and hurt his neck and back.
Appellant missed a good deal of time from work and complained of back pain, but no neurological or orthopedic objective findings confirmed any residual of either accident. Dr. J. Robert Campbell did find appellant had degenerative arthritic changes in the spine.
On January 15, 1975, appellant applied for an in-line-of-duty disability retirement pension. At about the same time as he applied for a disability pension appellant was referred by the city to Anthony Moore, Ph.D., a clinical psychologist, who opined that the accident of November 30,1973, and its sequelae either caused or aggravated a depressive reaction of such intensity and duration as to warrant psychological treatment.
Appellant was also referred by the Medical Board to Dr. Myron H. Silverman, a psychiatrist. Silverman treated appellant, initially seeing appellant on a weekly basis for medication; in May of 1975, he became the “primary and sole treater.” Silverman admitted appellant to Tampa Heights Hospital on May 9, 1975, as a suicidal precautionary measure. According to Silverman, appellant gradually improved to the point he was placed “on open ward regime.” On June 12, 1975, when he was made aware of dismissal proceedings being instituted against him by the Tampa Police Department, his depressive symptoms became quite severe again and it was necessary to transfer him to a closed ward. Silverman, in both his March 17, 1975 letter and his June 16, 1975 letter concluded that appellant’s symptoms were duty related, stating in the June 16 letter:
Mr. Hunter’s current admission has offered me the opportunity for a thorough review of his history and clinical picture. *428 This has underscored the reality of my original conclusion, that the stress of the industrial accident on November 30, 1974, [sic] and its sequelae were the major contributing factor [sic] to his current medical condition.
Appellant’s application for an in-line-of-duty pension was denied on March 18, 1975. He subsequently filed this action for declaratory judgment seeking to have the Board’s ruling overturned.
The evidence adduced at appellant’s bench trial consisted of voluminous medical records plus the testimony of appellant, Dr. Silverman, William L. Floyd, and Anthony Coniglio, the latter two being laymen who were members of the Board.
None of the documentary evidence was inconsistent with Dr. Silverman’s opinion, again expressed at trial, that appellant’s psychiatric condition was caused by the se-quelae to the accident of November 30, 1973. Silverman explained the situation as follows:
Mr. Hunter is a kind of a fellow that wraps his life around work or had until November of ‘73 where his whole daily routine was structured around work. His daily patterns, et cetera. The accident and the perceived pain he had following the accident and his inability to work, based on that, interrupted a stabilizing life pattern. So, to him, it was a traumatic, severe loss which is always a trigger for depression.
Appellant’s testimony indicated that the changes in his behavior following the accident had led to marital problems. Furthermore, his inability as a result of the accident to continue “moonlighting” as he had prior to the accident had led to financial difficulties. These problems, in turn, may have aggravated his emotional problems. Appellant’s testimony that he had had no marital or financial difficulties prior to the accident was uncontradicted by either testimony or documentary evidence.
The only evidence on behalf of the Board was the testimony of Messrs. Floyd and Coniglio. Floyd explained his reason for denying appellant an in-line-of-duty pension as follows:
The medical evidence before the Board and myself at that time gave me no indication of any objective disability. — physical disability on the part of Mr. Hunter. As I recall, the doctors found him totally subjective in that the only physical ailments [sic] they could discover is that Mr. Hunter complained of pain.

The medical evidence before the Board indicated that Mr. Hunter was not able to continue as a Police Officer, but I could find no connection between his disability as described by the doctors and the injury on the job.
In my opinion, the disability which he suffered stemmed from day-to-day living stress which every person is subjected to, as opposed to stress which would be unique to Police Officers.
Coniglio explained his reasoning thus:
Q You, as an individual Pension Board member, do you recall what you related his mental disability to when you reviewed his file and voted to deny him a line-of-duty disability pension?
A Yes, ma’am. It was his files from the doctor. Dr. Silverman, if I am not mistaken, showed that he had, among other problems — had marital and financial problems. After reviewing the complete file where he was put back to full duty, rehabilitated from all his injuries, documented by physicians that there was nothing physically wrong with him and then the marital and financial problems, I felt like this was the main cause of his problems.
No evidence of any kind was presented to show that appellant’s disability was caused by anything other than his November 30, 1973 injury. The opinions of Floyd and Coniglio are unsupported by any evidence in the record. Regardless of the standard of review applied,[1], the evidence was insuffi- *429 eient to support the final judgment and must therefore be reversed. See Hamilton v. Title Insurance Agency of Tampa, Inc., 338 So.2d 569 (Fla.2d DCA 1976).
Accordingly, the final judgment is REVERSED and the cause REMANDED with instructions to award appellant an in-line-of-duty pension from January 15, 1975, the date he filed his application.
HOBSON, A. C. J., and DANAHY, J., concur.

. Appellant contends his burden was to prove his case by a preponderance of the evidence, on a trial de novo, while the city argues that the trial court’s function was solely to determine *429 whether the Board’s action was or was not arbitrary and capricious. In view of our disposition of this case, we do not address this issue.