GEORGE GODARE, Plaintiff-Appellee, *v.* STERLING STEEL CASTING CO., Defendant-Appellant.

Fifth District    No. 81-107

Opinion filed December 23, 1981.

J. F. Schlafly and John F. Schlafly, Jr., both of Schlafly, Godfrey & Fitzgerald, of Alton, for appellant.

C. E. Heiligenstein and Brad L. Gadgley, both of Belleville, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff, George Godare, brought this action in the Circuit Court of St. Clair County to recover pension benefits allegedly due from his former employer, Sterling Steel Casting Co. Defendant filed a counterclaim alleging that the complaint was subject to a mandatory arbitration procedure pursuant to a provision in the pension agreement. The trial court dismissed the counterclaim and on appeal we affirmed, holding that the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*)

was not applicable to the proceedings. (*Godare v. Sterling Steel Casting Co.* (1981), 96 Ill. App. 3d 601, 421 N.E.2d 925.) On remand, the circuit court of St. Clair County entered judgment for the plaintiff and awarded him compensatory damages, prejudgment interest and punitive damages, finding that the decision of the Illinois Industrial Commission awarding plaintiff compensation for total and permanent disability, which award was confirmed by the circuit court and affirmed by the supreme court was *res judicata* as to the instant controversy. From that judgment, defendant takes this appeal.

On appeal, Sterling Steel denies that the award of workmen's compensation is *res judicata* with respect to plaintiff's entitlement to a pension. Defendant also denies that plaintiff has fulfilled the necessary conditions precedent for eligibility under the collectively bargained pension plan and denies that the trial court properly awarded prejudgment interest and punitive damages.

Plaintiff injured his back during the course of employment on July 10, 1975. At the time, plaintiff was an employee of defendant and a member of the United Steel Workers of America Local 1095, AFL-CIO. Plaintiff had been in defendant's employ for over 25 years and was 54 years of age at the time of his injury.

After leaving his employment, plaintiff filed an application for workmen's compensation benefits. He was examined by Dr. Lloyd Hill, an orthopedic surgeon, on May 20, 1976. Dr. Hill was of the opinion that plaintiff was permanently disabled from doing any work requiring physical labor. On July 7, 1976, a hearing was held before an arbitrator of the Illinois Industrial Commission. On July 9, 1976, the commission found that the plaintiff suffered from a total and permanent disability. This decision was affirmed by the Illinois Supreme Court. (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273, 384 N.E.2d 1326.) Defendant has made all workmen's compensation payments to plaintiff in full compliance with the decision of the Industrial Commission.

On October 26, 1977, plaintiff applied for a disability pension pursuant to the pension plan between the Steel Workers Union and defendant. This plan has been in effect since 1957 and has been periodically amended to reflect increases in the amount of benefits payable.

Paragraph 2, section I of the pension agreement provides that an employee with 15 years of continuous service who, through some unavoidable cause, becomes "permanently incapacitated," shall be entitled to a disability pension. "Permanently incapacitated" is defined in the same section and paragraph as follows:

"a) if he has been totally disabled by bodily injury * * * so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit and,

b) after such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life * * *."

Paragraph 2, section I, also provides:

"* * * such pension for permanent incapacity shall continue only so long as such petitioner shall be permanently incapacitated. The permanency of incapacity may be verified by medical examination prior to age 65 at any reasonable time."

Paragraph 2, section V, provides:

"If any difference shall arise between the Company and any Employee as to whether such Employee is or continues permanently incapacitated within the meaning of Section I, Paragraph 2, such difference shall be resolved as follows: The Employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by a duly authorized representative of the International Union. If they shall disagree concerning whether the Employee is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the Employee and consultation with the other two physicians, shall decide such question. The fees and expenses for the third physician shall be shared equally by the Company and the Union."

Upon receipt of plaintiff's application for disability pension, defendant raised a question as to whether plaintiff was or continued to be permanently incapacitated within the terms of the pension agreement. Defendant wrote to plaintiff four times between October 27, 1977, and April 6, 1979, requesting plaintiff to submit to a medical examination for the purpose of determining entitlement. Plaintiff has refused to be examined.

On April 2, 1979, plaintiff filed this action in the circuit court of St. Clair County alleging that defendant breached the agreement to pay pension benefits. Defendant filed a motion to dismiss the complaint which was denied. Defendant then filed its answer and a motion for summary judgment which was also denied. Defendant filed a counterclaim alleging that the dispute involved was subject to a mandatory arbitration procedure. The counterclaim was dismissed by the trial court. On appeal, we affirmed that decision finding that defendant could not compel plaintiff to arbitrate his claim because, *inter alia*, the Uniform Arbitration Act was inapplicable.

Plaintiff now asserts, and the trial court held, that the finding of the Industrial Commission, with affirmance by the Illinois Supreme Court,

that plaintiff is totally and permanently disabled for the purpose of workmen's compensation is *res judicata* with respect to his eligibility for a disability pension under the pension plan. Defendant argues that the finding of the Industrial Commission is not *res judicata* and that plaintiff has not fulfilled the necessary conditions precedent, pursuant to the pension plan, to receive his disability pension.

■■ Under the doctrine of *res judicata*, a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. The doctrine extends to matters decided and that could have been decided. This doctrine is sometimes called "estoppel by judgment." *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565.

■■ There is another branch of the general legal principle of *res judicata* usually denominated "collateral estoppel." Under this judicial doctrine, the judgment between the parties in the former action estops the parties from relitigating any matter in issue and actually or necessarily decided in the former action in subsequent litigation between the same parties on a different claim or cause of action. *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 370 N.E.2d 564.

However, collateral estoppel does not apply to issues that might have been decided but were not, nor to matters incidentally decided that were not essential to support the judgment in the prior action. *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 977-78, 387 N.E.2d 785, 790-91; *Raymond Construction Co. v. Midwest America Development, Inc.* (1978), 67 Ill. App. 3d 332, 384 N.E.2d 907.

The instant case involves two separate and distinct causes of action, the first for recovery under the workmen's compensation act, and the second for pension benefits under a collectively bargained pension agreement. Thus, the collateral estoppel branch of *res judicata*, if any, would be applicable. In the trial court's order of December 30, 1980, it stated that, "all the requirements of *res judicata* are met, and the factual issue determined in the prior litigation is the identical issue which the contract intended to be determined by the medical examination defendant seeks. Defendant, in effect, seeks to relitigate an issue already resolved." In more precise terms, defendant is collaterally estopped from relitigating the issue of whether plaintiff is totally and permanently disabled.

Before reaching the question of the applicability of collateral estoppel to the instant case, it should be noted that in Illinois, the *res judicata* effect affixes to the administrative determination rather than to that of the reviewing court. (*Citizens Savings & Loan Association v. Knight* (1966),

74 Ill. App. 2d 234, 219 N.E.2d 355.) There is authority for the proposition that decisions of an administrative agency can have *res judicata* effect in a proper case. Generally, this will be where the determinations are made for a purpose similar to those of a court and in proceedings which are "adjudicatory", "judicial", or "quasi-judicial". (2 Am. Jur. 2d *Administrative Law* §§496 through 498 (1962).) Our research reveals no Illinois authority directly on point for the application of *res judicata* as is asserted in the instant case, although the Illinois courts have recognized such applicability in different factual settings involving administrative determinations. See *Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 394 N.E.2d 1164; *Dempsey v. City of Harrisburg* (1971), 3 Ill. App. 3d 696, 279 N.E.2d 55.

■■■ We recognize that *res judicata* can apply to administrative determinations in a proper case; however, we find the doctrine inapplicable to the instant litigation. As stated, the collateral estoppel branch of *res judicata*, if any, would be applicable to this case; thus, identity of issues is required. (*Raymond Construction Co. v. Midwest America Development, Inc.* (1978), 67 Ill. App. 3d 332, 384 N.E.2d 907.) The trial court found that identical issues were involved in the two proceedings. We find this was incorrect. A superficial analysis could lead to the conclusion that a determination of disability under workmen's compensation is identical to and thus conclusive of a determination of "permanent incapacity" under the private pension agreement. However, the two issues are not identical. The mere fact that plaintiff successfully obtained benefits under workmen's compensation does not automatically render him entitled to benefits under the pension agreement. Different standards and procedures are utilized by workmen's compensation and the pension agreement to determine disability. An employee is totally and permanently disabled for the purposes of workmen's compensation benefits when he or she is unable to make some contribution to industry sufficient to justify payment of wages, that is, when he or she cannot perform any services except those which are so limited in quantity, dependability, or quality that there is no reasonably stable market for them. (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 371 N.E.2d 610.) Under the pension agreement, an employee who becomes "permanently incapacitated" shall be entitled to a disability pension "if he has been totally disabled by bodily injury * * * so as to be prevented thereby from engaging in *any* occupation or employment for remuneration or profit." (Emphasis added.) When these different standards are applied to the same facts, the same conclusion will not necessarily be reached. Procedurally, in a workmen's compensation hearing, medical testimony as well as evidence of the nature of claimant's employment, his age, experience and capabilities are considered by the arbitrator and reviewed by the Industrial Commission. (*A.M.T.C. of*

*Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 397 N.E.2d 804); whereas, entitlement under the pension agreement is founded exclusively on medical opinions. Considering the different standards applied and procedures utilized for determining disability, we find that the issues presented in the two proceedings are not identical. Therefore, the finding of the Industrial Commission that plaintiff is totally and permanently disabled for the purpose of workmen's compensation is not *res judicata* with respect to eligibility for a disability pension under the pension plan.

While we have found the trial court to be in error for its determination on the *res judicata* issue, there is an even more persuasive and elementary reason for reversal. The trial court found "that plaintiff has complied with the conditions precedent of the contract and is entitled to pension benefits * * *." Defendant asserts that plaintiff failed to satisfy a condition precedent to entitlement for a disability pension by failing to submit to a medical examination as required by the pension agreement. We agree.

A pension agreement, such as the one in the instant case, creates a contractual relationship between an employer and its employees. The plan in this case is part of a labor contract between defendant and the United Steel Workers of America Local 1095, AFL-CIO, of which plaintiff is a member. "Where the pension plan is reached as a result of collective bargaining and is embodied in a labor contract, it is contractual in nature and enforceable according to its terms." (Annot., 42 A.L.R.2d 461, 469 (1955). See also 60 Am. Jur. 2d *Pensions and Retirement Funds* §74 (1972).) The rights of participants in a private pension are governed by the terms of the plan. *Guinzy v. Curtice Burns, Inc.* (1975), 28 Ill. App. 3d 398, 327 N.E.2d 284.

■■ It is an elementary rule of contract law that a condition precedent must be performed or no contractual liability results. A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. (*In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 327 N.E.2d 317.) In the instant case, the express terms of the pension agreement, paragraph 2, section V, delineate the procedure to be followed if a dispute arises as to an applicant's disability. Further, the plan provides that if an applicant is found to be "permanently incapacitated" that this can be "verified by medical examination prior to age 65 at any reasonable time." Plaintiff has failed to satisfy the conditions precedent to establishing entitlement under the pension agreement by refusing to submit to a medical examination. Defendant stands ready to follow the procedures pursuant to the contract. As a result of plaintiff's failure to satisfy the condition precedent, no contractual liability has resulted.

Having found the trial court in error for the above stated reasons, we find it unnecessary to address the issues with respect to prejudgment interest and punitive damages.

The judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

HARRISON and WELCH, JJ., concur.