DANAHY, Judge.
Appellant, City of Tampa (the City), appeals from an order of the trial court which awarded police officer Rufus Lewis “in the service” disability benefits under a pension contract. The trial judge reversed a finding of the City’s Pension Board of Trustees (the Board) that Lewis’ disability benefits were “otherwise than in the service” under the terms of the pension contract. In its order the trial court reasoned that the City was barred by the doctrine of collateral estoppel from contesting the issue whether the injury was sustained “in the service” since that issue was decided in a prior worker’s compensation case. Because we find that the doctrine of collateral estoppel was improperly invoked, we reverse.
The City of Tampa Police Department (the Department) employed Lewis as a police officer in June 1967. Shortly thereafter Lewis and the City entered into a pension contract. Section 7 of the contract provides for payment of disability benefits as follows:
SECTION 7. BENEFITS, PENSIONS TO MEMBERS — COMPULSORY. The Board shall upon its application retire:
[[Image here]]
(B) Any member who in the service has received or shall receive within or without the city any injuries, disease or disability, which injury, disease or disability now permanently incapacitates him, physically or mentally from regular and continuous duty as a firefighter or police officer, then he shall receive in equal monthly installments an amount equal to 65% of monthly salary in effect at date of disability retirement with a minimum of $100.00 per month, plus V12 of any other earnings received within one year prior to date of disability retirement.
(C) Any member who after ten years of service in said departments has received or shall receive otherwise than in the service of the said departments any injury, disease or disability, which injury, disease or disability, now permanently incapacitates or shall in the future permanently incapacitate him physically or mentally from regular and continuous duty as a firefighter or police officer, *862 then he shall receive in equal monthly installments an amount equal to 2% of his average salary (as above computed) for each year of service with a minimum of 20% and a maximum of 50% of average salary.
Benefits under (B) are commonly referred to as being “in-line-of-duty,” while those under (C) are referred to as “non-line-of-duty.”
During his employment by the Department, Lewis participated as an active member of a community basketball team. Although the team uniforms bore the name “Tampa Police,” the Department did not sanction the team nor did it sanction the games as special events. Further, the Department did not contribute to financial support of the team and did not compensate any team member for his participation. In January 1980, while Lewis was playing in a game, he injured his leg. The injury was reported to, and accepted by, the Board as a section 7(C) “non-line-of-duty” occurrence.
After several months of rehabilitation, Lewis returned to full duty with the Department. Lewis had no problems with his leg until January 1982, when, while driving his police cruiser, he turned suddenly in his seat and aggravated the injury to his leg. Lewis again underwent treatment. He also filed a claim against the City pursuant to chapter 440, Florida Statutes (1981), the Worker’s Compensation Law. The deputy commissioner found that Lewis’ injury in 1982 was “simply a recurrence of the injury of January 16, 1980” and that the 1980 injury “did arise out of and in the course of his employment.” Neither party appealed the deputy commissioner’s order which awarded Lewis worker’s compensation benefits.
Although Lewis underwent surgery, he still complained of pain and swelling after standing or walking for more than two hours and was unable to fully perform his duties as a police officer. As a result he was involuntarily placed on leave of absence commencing in August 1983. When his condition did not further improve, Lewis applied for an in-line-of-duty disability retirement pension pursuant to section 7(B) of his contract. The Board then referred Lewis to its medical specialists. After reviewing the specialists’ reports, the Board voted to deny Lewis’ application for a line-of-duty benefit and instead voted to grant him a non-line-of-duty benefit. The Board notified Lewis of its decision, the reasons for denying his request, the evidence considered, and his right to request a hearing. Rather than request the hearing as provided by section 112.66(6), Florida Statutes (1983), Lewis sought review of the Board’s decision in the circuit court.
The trial court ruled that the issue whether Lewis’ injury was sustained “in the service” had been tried and determined in Lewis’ favor by the deputy commissioner in the worker’s compensation case. The court reasoned that since that issue had been resolved, the doctrine of collateral estoppel applied to bar its reconsideration before the Board. The court then entered a final judgment which reversed the Board’s decision and awarded Lewis a line-of-duty disability pension under section 7(B) of the pension contract. This appeal followed.
We begin our analysis with a discussion of collateral estoppel. The doctrine applies where the causes of action in two suits are different and the parties in both suits are identical. Krug v. Meros, 468 So.2d 299 (Fla. 2d DCA 1985). We note that although orders of the deputy commissioner in worker’s compensation proceedings are quasi-judicial acts, they are governed by the same rules regarding collateral estoppel as are applicable to the judgments or decrees of courts. Wurwarg v. Lighthouse Restaurant, 131 So.2d 469 (Fla.1961); Wellcraft Marine Corp. v. Turner, 435 So.2d 864 (Fla. 1st DCA 1983); Akins v. Hudson Pulp & Paper Co., 330 So.2d 757 (Fla. 1st DCA 1976). Here the parties to the worker’s compensation claim were identical to the parties in this action. Also, the causes of action — the first action was litigated under the Worker’s Compensation Law, and the present suit is based *863 on breach of a pension contract — are different. Even if that is so, the judgment in the first action only precludes these parties from relitigating here issues common to both causes of action which were actually presented, fully litigated, and resolved by a court of competent jurisdiction in the prior action. Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla.1978); Krug; Akins.
Our review of the record in the pri- or worker’s compensation action reveals that the only issues actually presented, fully litigated and resolved by the deputy commissioner were (1) whether Lewis’ injury resulted in a disability; (2) whether the injury was work related, i.e., arose out of and in the course of his employment; and (3) whether the 1982 injury was a new injury or an aggravation of the 1980 injury. A worker’s compensation tribunal has jurisdiction to decide these issues when determining whether the injury is compensable under chapter 440, Florida Statutes. These issues were adjudicated in Lewis’ favor. Since no review of the deputy commissioner’s order was sought, that order became final. Accordingly, these parties are collaterally estopped from relitigating those same issues.
Although collateral estoppel does apply to those three issues, we find that the deputy commissioner’s order does not bar consideration of separate and distinct issues raised in the present litigation. These issues are whether Lewis is entitled to disability benefits under the terms of his pension contract and, if so, whether the disability was received “in the service” or “otherwise than in the service” within the meaning of sections 7(B) and 7(C). The fact that Lewis obtained benefits under worker’s compensation law does not automatically entitle him to benefits under his pension contract. Different standards and procedures are utilized by the deputy commissioner and the Board to determine disability and the character of that disability. Godare v. Sterling Steel Casting Co., 103 Ill.App.3d 46, 58 Ill.Dec. 588, 430 N.E.2d 620 (1981); Jackson v. City of Sacramento, 117 Cal.App.3d 596, 172 Cal.Rptr. 826 (1981); Woods v. Delta Air Lines, Inc., 237 Ga. 332, 227 S.E.2d 376 (1976); La Bella v. Southwestern Bell Telephone Co., 224 Mo. App. 708, 24 S.W.2d 1072 (1930). We note that, at the time he filed his worker’s compensation claim, Lewis had not yet filed his application for section 7(B) pension benefits. Accordingly, neither of the additional issues in the case before us were presented to the deputy commissioner. Moreover, the deputy commissioner had no jurisdiction or authority to determine either Lewis’ entitlement to any benefits under his pension contract or the character of such benefit if awarded even if these issues had been raised. See chapters 121, 185, 440, Florida Statutes (1983); Jackson; Godare; Woods. We find, therefore, that the Board was not foreclosed from controverting Lewis’ claim for section 7(B) pension benefits.
In sum, we hold that the trial court erred in ruling that the doctrine of collateral es-toppel applies to the issue whether the injury was sustained “in the service” and that therefore Lewis is entitled to a line-of-duty disability pension. Furthermore, we find that there is competent, substantial evidence to support the Board’s decision. See Havener v. Division of Retirement, 461 So.2d 231 (Fla. 1st DCA 1984); Tingler v. City of Tampa, 400 So.2d 146 (Fla. 2d DCA 1981); Hunter v. City of Tampa, 379 So.2d 426 (Fla. 2d DCA 1980); City of Miami v. Shires, 167 So.2d 22 (Fla. 3d DCA 1964). See also De Groot v. Sheffield, 95 So.2d 912 (Fla.1957); Rightler v. Pompano Beach Police & Firemen’s Pension Fund, 467 So.2d 461 (Fla. 4th DCA 1985).
For the reasons stated above we reverse the order of the trial court and remand for reinstatement of the Board’s order finding Lewis entitled to non-line-of-duty benefits.
GRIMES, A.C.J., and SCHOONOVER, J., concur.